# William J. Luthmers, Appellee, v. Samuel E. Hazel, Appellant.

1. MALICIOUS PROSECUTION, § 67*—*how bad reputation of plaintiff may not be shown.* In an action for malicious prosecution, while evidence showing plaintiff's general reputation in the community at the time of the act complained of is competent, his bad reputation cannot be shown by proof of specific acts.

2. MALICIOUS PROSECUTION, § 82*—*when forgery of signature to note is question for jury.* In an action for malicious prosecution growing out of plaintiff's arrest and prosecution on the charge of having forged defendant's· signature to a note, where the evidence is conflicting as to whether or not the signature was defendant's, it is for the jury to determine whether or not defendant signed it.

3. MALICIOUS PROSECUTION, § 66*—*when copy of order of nolle prosequi is admissible to show termination of prosecution.* A copy of the order of *nolle prosequi* entered in a case on which an action for malicious prosecution is based is competent to show plaintiff's discharge for the purpose of showing the termination of the case, and especially is such a copy admissible when not entered in the case upon which the malicious prosecution action is based but in one of a series of transactions which tend to show that malice actuated the defendant.

4. MALICIOUS PROSECUTION, § 65*—*what is proper to be considered on question of malice.* In an action for malicious prosecution in which it appears that a series of prosecutions were instituted, the fact that after a *nolle prosequi* was entered in one of the series defendant did not cease to prosecute plaintiff is proper to be considered by the jury on the question of defendant's malice.

5. MALICIOUS PROSECUTION, § 13*—*what is effect of following advice of reputable attorney in prosecution of action.* In an action for malicious prosecution based on a prosecution of plaintiff on the charge of forging defendant's signature to a note, the fact that defendant consulted and followed the advice of a reputable attorney is not sufficient to establish that he acted in good faith without malice and with probable cause.

6. MALICIOUS PROSECUTION, § 13*—*when following advice of reputable attorney is no defense.* In an action for malicious prosecution, the fact that defendant followed the advice of a reputable attorney does not relieve him from liability where he misrepresented the facts to his attorney.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

7. MALICIOUS PROSECUTION, § 21*—*what essential to sustain action for.* Malice and lack of probable cause are essential to sustain an action for malicious prosecution.

8. MALICIOUS PROSECUTION, § 84*—*malice as question of fact.* In an action for malicious prosecution, malice is a question of fact.

9. MALICIOUS PROSECUTION, § 83*—*probable cause as question for jury.* In an action for malicious prosecution, whether there was probable cause is for the jury to determine and from all of the evidence, not from a part of it.

10. MALICIOUS PROSECUTION, § 74*—*when malice and lack of probable cause shown.* In an action for malicious prosecution, based on prosecutions relative to a note held by plaintiff which he alleged was executed by defendant, where it appears that the latter failed to secure possession of the note in replevin proceedings which he brought for that purpose, failed to have plaintiff indicted in his own county, had him enticed to another county, induced him to offer the note for sale there, caused him to be imprisoned in jail three times and suffered him to be indicted three times in such county after being discharged on preliminary hearing in his own county, the grand jury failing to return an indictment, and after being discharged after a preliminary hearing in a Municipal Court of such other county, the jury are warranted in finding that there were malice and lack of probable cause on defendant's part.

11. MALICIOUS PROSECUTION, § 98*—*when verdict not excessive.* In an action for malicious prosecution, a verdict for $16,000 is not excessive, where it appears that plaintiff was called upon to defend a civil suit, twice subjected to preliminary hearings, once in a foreign county, three times indicted in a foreign county, required to get ready to go to trial on three indictments at two different terms of a court in a foreign county, tried on one of those indictments and found not guilty by the jury, three times imprisoned in jail, twice in a foreign county, once under extremely disgusting and revolting conditions, enticed out of his county and made to go out of his jurisdiction to defend himself in all but two of his numerous arrests and trials, that he had to expend $2,600 in defending himself, and that plaintiff, as shown by the proof, is wealthy.

12. MALICIOUS PROSECUTION, § 58*—*what proof required in action for.* No presumption can be made to uphold a verdict for plaintiff in an action of malicious prosecution, but all the facts necessary to make out a case must be proved by a preponderance of the evidence.

*See Illinois Notes Digest, Vols. XI to XV. and Cumulative Quarterly same topic and section number.

Appeal from the Circuit Court of Jasper county; the Hon. WIL-
LIAM B. WRIGHT, Judge, presiding. Heard in this court at the Octo-
ber term, 1918. Affirmed. Opinion filed November 1, 1918. *Cer-
tiorari* denied by Supreme Court (making opinion final).

S. J. GEE, A. M. GEE, P. W. BARNES and JOHN C.
RITTER, for appellant.

LEWIS & LEWIS and DAVIDSON & FITHIAN, for appel-
lee.

MR. JUSTICE HIGBEE delivered the opinion of the
court.

William J. Luthmers, appellee, started suit in the
Circuit Court of Richland county, to the April term,
1916, against Samuel E. Hazel, appellant, to recover
damages in the sum of $25,000 for alleged malicious
prosecution and false imprisonment.

A *præcipe* for summons was filed in the Circuit
Court of Richland county and summons was issued
from and a declaration, consisting of six counts, filed
in said court. In some manner not shown by the rec-
ord, a change of venue seems to have been taken to
the Circuit Court of Jasper county, where a plea of
not guilty was filed by appellant and all subsequent
proceedings were had in that court. The case was
tried before a jury in said Circuit Court at the April
term, 1917, and a verdict rendered in favor of appel-
lee in the sum of $16,000. Motions for new trial and
in arrest of judgment were overruled and judgment
rendered on the verdict. The defeated party brings
the case to this court by appeal, assigning a number
of errors.

On March 9, 1914, appellee, William J. Luthmers, a
piano tuner, was living at Olney, Richland county,
Illinois, where he had then resided about 12 years. At
that time appellant, Samuel E. Hazel, a former farmer,
the owner of large land interests with oil underlying
same, and of stock in various banks, was engaged as

a merchant at Olney, where he had then resided about 5 years. Appellee claims that on said date he sold to appellant a one-half interest in a patented lock-nut invention for $20,000, taking in payment therefor appellant's note dated that day, due in 90 days, for such sum. Appellee claims the transaction was closed and the note signed in appellant's store in Olney; that appellant made some objection to the bill of sale and he rewrote it, and later in the day called at the store and left the bill of sale with Howard Hazel, appellant's son, appellant not being at the store at that time. Howard Hazel's testimony corroborates appellee as to his being at the store and leaving with him the bill of sale. They contradict each other as to what was said. Appellant disclaims the execution of the note, avers it is a forgery and denies the entire transaction. He claims he was sick and not at the store on that day, and in that he is corroborated by his son and some other evidence. A few days later appellee tried to borrow money from a local bank, offering the note in question as collateral, but the loan was refused. Shortly after that appellant attempted to get possession of the note by suit in replevin but failed. Still later appellant made complaint before a justice of the peace and had appellee arrested on a charge of forgery in connection with the note in question. Appellee took a change of venue, was bound over to await the action of the grand jury and his bail was fixed at $500. He was confined in jail 2 days before he could give bail. The Richland county grand jury, however, failed to indict him and he was discharged and his bail released. There was some testimony to the effect that after the replevin suit and attempt to have appellee indicted by the grand jury of Richland county, appellant stated that if he could get appellee to Chicago he would railroad him to the penitentiary, although appellant denies making any such statements. Appellant then employed members of the Burns Detective Agency to

assist him. One of the detectives came to Olney in disguise, formed the acquaintance of appellee and some of his friends and gained his confidence. The detective represented to appellee that he had a brother, a banker in Missouri, who would buy the note and he showed appellee a letter and a telegram with reference to such proposed transactions purporting to be from the brother. He also arranged with appellee to go to Chicago to meet the brother, who he said wanted to buy the note. He paid appellee's expenses to that city, where they met the purported brother, he being Clarence Tobie, another Burns' detective, who was there by previous arrangement with appellant's attorney, as were also appellant and his attorney. After some time appellee's note was mentioned. He offered to sell it and the detectives got it in their possession and had appellant make complaint charging appellee with forging the same. The complaint was made before a judge of the Municipal Court of Chicago and was sworn to by appellant. Appellee was then taken to the office of the State's Attorney of Cook county and given a very severe examination by representatives of that office. He was then taken to the Harrison street station jail and put in a cell, where he remained that day, the following night and until about 9 o'clock the next day. Afterwards he was brought before the judge of the Municipal Court who issued the warrant and after a preliminary examination was discharged. There were two men besides appellee in the cell where he was confined and neither chair nor bed. Later another man was put into that cell who was intoxicated and vomited over the cell and wallowed in his own filth. The other three inmates, including appellee, stood on an iron bench swung from the wall of the cell all night. J. C. Ritter, one of appellant's attorneys of record, and appellant were present at the hearing before the Municipal Court when appellee was discharged. Mr. Ritter was present or directed all

legal proceedings above detailed, and appellant seems to have had knowledge of all plans made and steps taken in this connection. After appellee was discharged by the Municipal Court, the State's Attorney of Cook county refused to give him his note and later had him indicted by a grand jury of Cook county on a charge of forgery of the $20,000 note in question in Chicago. Appellee's bail was fixed at $1,500, which made it necessary for him to employ bondsmen, costing him $75. He, with his counsel and witnesses, appeared for trial on that indictment at the proper time, but appellant, his counsel and witnesses failed to appear for trial, the case was dismissed for want of prosecution and appellee discharged. The State's Attorney of Cook county continued to hold the note in question and at the November term following had appellee indicted by another Cook county grand jury on a charge of attempting to obtain money from Clarence Tobie, one of the detectives, by means of a confidence game, and also on a charge of forgery of the note in question in Cook county with intent to defraud appellant. Appellee was again arrested and confined in jail 2 days before he could arrange to give bail for his appearance at the January term, 1916, of the Criminal Court of Cook county. His bail was fixed at $5,000 on each indictment, and that time it cost him $225 for bondsmen.

At the January term, 1916, of said court, appellee appeared with his counsel and witnesses, ready for trial. The State's Attorney then dismissed the case, charging him with attempting to obtain money from Clarence Tobie by means of a confidence game and appellee was discharged and released under that indictment. At that time and place a trial was had under the indictment charging him with forgery of the note in question, in Chicago, with intent to defraud appellant, and the jury found appellee not guilty and he was discharged. At this trial also appellant and

his attorney, Mr. Ritter, were present.  Appellee has paid out for bondsmen, attorney fees and other expenses in his defense the sum of $2,600.  The declaration made the usual allegations as to the name, fame and character of appellee and set forth the injury to him resulting from the alleged malicious prosecution and false imprisonment, and there was a plea of not guilty.  Evidence was admitted to show that some 10 or more years before the alleged forgery appellee had been placed in jail on minor charges.  Evidence showing general reputation of appellee in the community at the time was competent (*Rosenkrans v. Barker,* 115 Ill. 331), but bad reputation cannot be proved by specific acts.  *Waters v. West Chicago St. R. Co.,* 101 Ill. App. 265.

On the question whether the signature to the note in dispute was appellant's signature, appellee had twenty-two witnesses and appellant had fifteen.  It was clearly a question of fact for the jury to determine whether appellant did or did not sign the note, that is, whether or not appellee was guilty of forgery, and under the record in this case the finding of the jury on that point should not be disturbed.  It is claimed by appellant that the court erred in admitting in evidence, without special limitation, a copy of the order of *nolle prosequi* in the Criminal Court in Cook county.  It has been held that the copy of the order of *nolle prosequi* entered in a case which was the basis of an action for malicious prosecution was error.  *Gentzen v. H. M. Hooker Co.,* 173 Ill. App. 127.  It is always competent, however, to show a discharge in such a case for the purpose of showing the termination of the suit.  *Tumalty v. Parker,* 100 Ill. App. 382; *Enright v. Gibson,* 119 Ill. App. 411.  But here the *nolle prosequi* referred to was not entered in the case which was the basis of this suit but was one of a series of transactions which tended to show that malice actuated the appellant.  The fact that, after the *nolle prosequi* was

entered in said case, appellant did not cease to prosecute appellee, was proper to be considered by the jury upon the question as to whether appellant was really actuated by malice in the various proceedings he instituted and the steps he took to prosecute appellee. It appears that appellant consulted and followed the advice of an attorney, whose reputation and ability are not questioned. That alone does not establish the fact that he acted in good faith, without malice, and that there was probable cause. In considering this case we must have constantly in view the question of who executed the note in controversy. In the view which the jury must have taken of the case, it was not necessary for appellant to consult an attorney to determine whether it was probable that appellee was guilty. Appellant knew whether or not he signed it and whether or not appellee was guilty. It is not a case where he might have been mistaken, and where his good faith and the probability of the facts being as he really thought they were would relieve him. It was not a question whether he was justified in reaching the conclusion he did. If appellant really signed the note, he misrepresented the facts to his attorney, and therefore he cannot be excused or relieved from liability because he acted on his attorney's advice. *William M. Ross & Co. v. Innis*, 35 Ill. 487; *Roy v. Goings*, 112 Ill. 656. Malice and lack of probable cause are essential to sustain an action for malicious prosecution. *Leidig v. Rawson*, 2 Ill. (1 Scam.) 272. Malice is a question of fact for the jury. The jury having concluded that appellant signed the note would have naturally found that there was lack of probable cause. When the lack of probable cause was established, malice could reasonably be inferred from the facts and circumstances in proof. (*Leidig v. Rawson, supra; Harpham v. Whitney*, 77 Ill. 32.) Whether there was probable cause also was for the jury to determine and does not depend upon part but all the evidence. *Hirsch v. Feeney*, 83 Ill. 548.

In this case appellant failed to get possession of the note in the replevin case, failed to have appellee indicted in his own, Richland county, had him enticed to Cook county, induced him to offer the note for sale there, made complaint there that appellee forged the note in Cook county, caused him to be imprisoned in jail three times and suffered him to be indicted three times in Cook county after being discharged on preliminary hearing in his own county, the grand jury failing to return an indictment, and after being discharged after a preliminary hearing in the Municipal Court of Cook county. This constitutes such a chain of facts and circumstances that the jury were warranted in concluding that there were both malice and lack of probable cause on the part of appellant.

Appellant contends that the judgment is excessive and should be reversed on that ground. The amount is large but considering that appellee was called upon to defend a civil suit, twice subjected to preliminary hearings, once in a foreign county, three times indicted in a foreign county, required to get ready to go to trial on three indictments at two different terms of a court in a foreign county, tried on one of those indictments and found not guilty by the jury, three times imprisoned in jail, twice in a foreign county, once under extremely disgusting and revolting conditions, enticed out of his county and made to go out of his jurisdiction to defend himself in all but two of his numerous arrests and trials, that he had to expend $2,600 in defending himself, that appellant, as shown by the proof, is wealthy, and the other facts and circumstances, we do not feel called upon to disturb the judgment because of the amount thereof. In *Mexican Cent. Ry. Co. v. Gehr*, 66 Ill. App. 173, a judgment for $40,000 was permitted to stand.

Numerous authorities were cited in support of the proposition that no presumption can be made to uphold a verdict of this kind, and all the facts necessary

to make out a case must be proved by a preponderance of the evidence. This is undoubtedly the law, but nothing in this record warrants us in holding that appellee failed to prove all the facts necessary to make out a case by a preponderance of the evidence.

Finding no reversible error the judgment of the Circuit Court is affirmed.

*Affirmed.*