Modest Ferrell, Appellee, v. Leonard J. Livingston, Appellant.

Gen. No. 45,229.

Opinion filed October 24, 1951. Rehearing denied November 13, 1951. Released for publication November 21, 1951.

ELLIS & WESTBROOKS, CLAUDE W. B. HOLMAN, EDWARD M. BYRD, and WILLIAM P. RHETTA, JR., all of Chicago, for appellant; RICHARD E. WESTBROOKS, of Chicago, of counsel.

ALEX M. GOLMAN, and DAVID F. SILVERZWEIG, both of Chicago, for appellee; DAVID F. SILVERZWEIG, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff brought this action for false arrest and imprisonment and malicious prosecution. After issues joined, a trial with a jury resulted in a verdict and judgment for $15,000 in favor of plaintiff, from which judgment defendant appeals.

Many errors are assigned by defendant for reversal of the judgment. We shall discuss only those we deem important in the consideration of this appeal.

490

Defendant contends (1) that a claim for false arrest and imprisonment is merged in an action for malicious prosecution based upon such arrest and imprisonment; (2) that the court allowed incompetent and prejudicial evidence to be admitted; (3) that the evidence fails to disclose a termination of the criminal prosecution favorable to plaintiff, which is necessary to sustain an action for malicious prosecution; (4) that the evidence establishes a complete defense of reliance upon advice of counsel given and acted upon in good faith in the bringing of the criminal prosecution; (5) that the court should have directed a verdict for defendant at the close of plaintiff's case and at the close of all the evidence; (6) that plaintiff's complaint fails to state a cause of action and should have been dismissed on defendant's motion; (7) that the verdict and judgment are against the manifest weight of the evidence; (8) that improper instructions were given for the plaintiff; and (9) that the verdict is excessive.

The record discloses the following essential facts out of which this controversy arose. Two alleged burglaries occurred on July 23 and July 26, 1943, respectively, in the private office defendant maintained in a building located at 4636 South Parkway, Chicago. Defendant was the president and general manager of his company, doing business at that address. Defendant claims that in the first burglary two guns, a radio and a diamond ring were stolen. In the second burglary another gun, a radio and some jewelry were taken. Defendant reported the burglaries to the police and then employed a private detective to investigate. He gave Chamberlain, the private detective, the names of six suspects, some employees among them, the plaintiff, who was the janitor of the building, and another who had offices in the building. Chamberlain had several places searched for the missing articles, including the home of plaintiff, but found none of the articles.

Plaintiff testified without dispute to the number of positions he held, and that from 1935 to 1938 he performed part-time work as a janitor so that he could resume his college studies; that in the latter year he assumed a full-time employment as a janitor for the building in which defendant's office was located; that he had keys to the front and rear outer doors only; that he had no keys to the locked inside doors of defendant's office; that he had no duties in connection with defendant's office; that Chamberlain, whom he had known since 1931, accosted him on the evening of September 28, 1943, and tried to interest plaintiff in taking a position with Chamberlain's private detective agency, to be assigned to patrol service; that they then proceeded into Chamberlain's office a short distance away, where Chamberlain exhibited a number of guns to plaintiff and advised him that if he joined the patrol service he would need a service revolver, which Chamberlain was willing to sell him; that plaintiff selected a .38 caliber revolver at a cost of $45; that Chamberlain then asked him if he had any guns, and said if he would bring them in for appraisal he could apply them as a credit on the revolver selected by plaintiff; that plaintiff then agreed to bring in two guns he had, for appraisal, and trade-in; and that an appointment was made for them to meet again the following morning.

Plaintiff claimed to own three guns. One was a Regina Spanish automatic pistol, .32 caliber; another was a Frontier model Colt revolver, not serviceable; and another a Derringer, described as a "toy gun" holding one bullet. The offer of employment by Chamberlain to plaintiff and to credit any guns, after appraisal, upon the purchase price of the one selected for patrol service, admittedly, was a ruse employed to ascertain whether plaintiff had any guns, and to induce him to bring them to the office so that they could be inspected and checked, in the hope that they answered

the description of the missing guns taken in the burglaries. At the appointed time, plaintiff brought to Chamberlain's office his two guns, the Regina Spanish automatic and the Frontier Colt. The Derringer he left at home. At the latter meeting another appointment was made for the evening of the same day, to give Chamberlain time to have plaintiff's guns appraised.

That same evening plaintiff went to Chamberlain's office, and within a few minutes a police detective, James Foster, came in with the Spanish automatic and asked Chamberlain where he obtained the guns left at the gunsmith. Chamberlain then told Foster that he obtained them from plaintiff. Foster said they were stolen from the office of defendant. Plaintiff denied they were stolen, and said that he had the gun for five years and could prove it by bringing in the man from whom he bought the gun, and others who knew that the gun had been in his possession a considerable time before the burglaries. Plaintiff, Chamberlain and Foster then proceeded to defendant's office, between 6:30 and 7:00 p.m. that evening, where, in one of the rooms of defendant's company on the first floor, Foster for the first time produced plaintiff's two guns. Foster asked defendant if they were his guns, and he replied they were. Plaintiff protested, said that they were his, told them where he had procured them, and said he could bring witnesses to prove it. He asked defendant to contact some of those witnesses, and defendant replied he was not taking orders from plaintiff. Plaintiff was willing to take a lie detector test, suggested by Foster. Foster asked defendant if he had the numbers of the missing guns, to which defendant replied that he had, in his office, and that he would get them. In order to get to his office on the second floor, it was necessary for him to go the full length of the building to the rear, some 75 to 90 feet, and then back some 15 or 20 feet on the second floor toward the front, where his office was

493

located. Within too short a time to allow him to walk that distance and return, defendant came back to the same room on the first floor, with a slip of paper, purporting to record the numbers of the guns, corresponding to the numbers on the guns produced by plaintiff. A number of keys found on plaintiff were then taken from him and compared with the keys in defendant's possession. Foster asked defendant if the keys compared, and he said they did not. Defendant then directed Foster to lock up plaintiff, whereupon plaintiff was taken to the police station and remained there until the next day. The next day complaints were signed by defendant, charging plaintiff with the two burglaries. After confinement in a cell at the police station for some 28 hours, plaintiff was able to get bond and was released pending a hearing. Upon the trial, plaintiff testified how he obtained possession of the three guns, giving the names of the parties to whom they originally belonged, and that his acquisition of them was long before the two burglaries in question.

When the two criminal complaints came on for hearing in the municipal court of Chicago, plaintiff was present with his witnesses to prove his ownership of the guns. Defendant's personal counsel advised the court that because of the intercession with defendant by persons interested in plaintiff, one of whom was plaintiff's sister, working for defendant's company, complainant did not desire to prosecute the charges, whereupon the charges were dismissed for want of prosecution.

Upon the hearing of the instant suit, it was claimed that the dismissal for want of prosecution was the result of an agreement and compromise arranged between the counsel for plaintiff and defendant. There was a sharp dispute in the evidence as to this alleged agreement, and it became a question of fact for the jury.

It appears from the record that after the termination of the criminal prosecution, plaintiff brought an action in detinue in the municipal court of Chicago, against the police officers, to recover possession of the guns taken from him. Defendant was not a party to that proceeding, which resulted in a judgment finding right of property in the plaintiff. A certified copy of the judgment in the action in detinue was offered and received upon the trial of the instant case, over objection of defendant.

██ To sustain an action for malicious prosecution it is necessary to prove malice. *McElroy v. Catholic Press Co.,* 254 Ill. 290; *Hanneman v. Minneapolis, St. P. & S. S. M. Ry. Co.,* 248 Ill. App. 196. Malice may be inferred from want of probable cause. *McElroy v. Catholic Press Co., supra; Glenn v. Lawrence,* 280 Ill. 581; *White v. Briscoe,* 335 Ill. App. 566; *Hanneman v. Minneapolis, St. P. & S. S. M. Ry. Co., supra.* We are satisfied from an examination of the evidence that if the jury believed plaintiff and his witnesses, there was ample evidence to sustain the action for malicious prosecution and the count charging false arrest and imprisonment.

██ A general verdict upon a complaint charging false arrest and imprisonment and malicious prosecution will be sustained if there be sufficient legal proof. *Mexican Central Ry. Co. v. Gehr,* 66 Ill. App. 173; *Enright v. Gibson,* 219 Ill. 550; *Luthmers v. Hazel,* 212 Ill. App. 199. The complaint in the instant case sufficiently charged false arrest and imprisonment, as well as malicious prosecution. The fact that they were joined in one complaint, under the authorities cited, did not render the complaint vulnerable to attack for misjoinder. The jury had a right to believe plaintiff that it was defendant who directed Foster to arrest him. If there were no reasonable grounds to believe that plaintiff was guilty of the thefts charged, the arrest

and imprisonment were unjustified. These questions were essentially questions of fact within the province of the jury to determine. Having done so, we should not disturb the verdict unless we believe that it is against the manifest weight of the evidence. *Schneiderman v. Interstate Transit Lines, Inc.,* 331 Ill. App. 143, affirmed 401 Ill. 172; *Ambrose v. Doyle,* 333 Ill. App. 161; *McCauley v. Paden,* 341 Ill. App. 70.

 The defense relied upon, of advice of counsel before swearing to the criminal complaints against plaintiff, was an affirmative defense, which defendant had the burden of proving. That burden required a clear showing that before the arrest of plaintiff, directed by defendant, and the swearing to the criminal complaints by defendant, defendant sought the advice of counsel and in good faith made a full, complete and truthful statement of the facts, and that he acted solely upon such advice. *Lyons v. Kanter,* 285 Ill. 336; · *Froemke v. Massman,* 215 Ill. App. 86. We think the evidence clearly demonstrates that defendant's counsel did not give the advice to defendant until after defendant had directed Foster to arrest plaintiff, and defendant did not rely entirely upon the advice of counsel. Whether defendant made a full, complete and truthful statement of the facts to his attorney, and acted solely upon such advice, was peculiarly within the provice of the jury to determine.

Seven instructions given for plaintiff are complained of as erroneous and prejudicial. We have examined them, and it would unduly extend this opinion to discuss defendant's contentions as to each of them. We are satisfied that the contentions are without merit and do not call for a reversal of the judgment.

 The admission in evidence of the certified copy of the judgment in the detinue action was, under the circumstances, improper, but we do not regard this

evidence so prejudicial to the defendant as to warrant a reversal.

 In view of the present day value of the dollar, the evidence of plaintiff's standing and reputation in the community in which he lived, and the specific loss of earnings and proven injury, we cannot say the verdict is excessive. *Luthmers v. Hazel, supra; Howard v. Baltimore & O. C. T. R. Co.*, 327 Ill. App. 83; *Kavale v. Morton Salt Co.*, 242 Ill. App. 205, affirmed 329 Ill. 445; *Frost v. Andes Candies, Inc.*, 329 Ill. App. 535.

We think the judgment represents substantial justice, and it is affirmed.

*Affirmed.*

KILEY, P. J. and LEWE, J., concur.