Arthur Aldridge and Guy Burnett, Plaintiffs Below, Arthur Aldridge, Appellee, v. Leonard Fox et al., Defendants Below. On appeal of Leonard Fox and Montgomery Ward and Company, Inc., Appellants.

Gen. No. 45,669.

Opinion filed September 23, 1952. Released for publication October 14, 1952.

WINSTON, STRAWN, BLACK & TOWNER, of Chicago, for appellants; DOUGLAS C. MOIR, GEORGE B. CHRISTENSEN, and EDWARD J. WENDROW, all of Chicago, of counsel.

MEIER & MEIER, of Chicago Heights, for appellee; ALFRED ROY HULBERT, of Chicago, of counsel.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiffs Arthur Aldridge and Guy Burnett filed suit against defendants Leonard Fox, Montgomery Ward & Co., Incorporated, and William B. Wickham, lieutenant of police of Chicago Heights, Illinois, charging false imprisonment and malicious prosecution. Defendants Leonard Fox and Montgomery Ward & Co., Incorporated, appeal from judgments entered upon a jury's verdict entered against them for $300 and $2,500, respectively, in favor of plaintiff on the

charge of false imprisonment. They were found not guilty of malicious prosecution charges. Wickham was found not guilty of both.

The cause of action arises out of the following facts: On January 28, 1947, six portable radios, lacking electrical cord, were missed from Wards' Chicago Heights store. The plugs on the cords, designed to fit this particular type of radio, were obtainable only at Wards. The latter notified the Chicago Heights' police that the radios had been stolen, and were advised to inform the police if anyone sought to purchase such a cord. On February 25, 1947, plaintiff appeared for such purpose at the Chicago Heights' store. Directing that the police be called, Fox, who was manager of the appliance department which included radios and radio appliances, by pretext induced plaintiff to remain in the store. Upon the arrival of the police, pointing out plaintiff to them, he said: ''There is your man.'' Plaintiff was then taken by the police in a squad car to the police station.

Plaintiff was held and questioned in the station by several policemen from around 4:00 in the afternoon until sometime between 8:30 and 9:00 that night, when he was released on his own bond. He was held on a technical charge of disorderly conduct which was eventually dismissed. He maintained that the radio for which he sought the cord had been given to his wife as a gift by a family friend.

Plaintiff lived in South Holland, Illinois, on a small farm. He had lived there for 30 years. He was 57 years of age and for 30 years prior to his arrest had been employed as a yard conductor by the Chicago and Eastern Illinois Railroad. Before the incident in question he had never been arrested or charged with the commission of any crime.

Defendants, admitting Aldridge was falsely imprisoned, insist there is no legal evidence that either

Fox or Wards was guilty of imprisoning him or causing his imprisonment; this they contend was done by the Chicago Heights' police department. They say further that, assuming Fox was guilty of falsely imprisoning plaintiff, then the $2,500 judgment against Wards must be set aside or reduced to $300 because it cannot be liable to plaintiff in a greater amount than that assessed against the agent whose act caused the liability. They also complain of certain instructions and urge that the verdict against Wards is excessive.

█ It is admitted that Fox was in charge of the appliance department from which the radios were missed about a month before plaintiff's arrest, and that after he reported the alleged theft it was arranged between the Chicago Heights' police department and Wards for the latter to call the police department if and when a request was made by any "suspicious" one for a cord to fit this type radio. That Fox was a party to this arrangement is indicated from his actions leading up to plaintiff's arrest. Under the circumstances we think it clear that Fox, acting for Wards, caused plaintiff's arrest. Having concluded that plaintiff was arrested as a result of Fox's activity and that Wards is consequently liable on the theory of *respondeat superior,* it becomes unnecessary to consider the participation of any other of Wards' employees in plaintiff's arrest.

Plaintiff's instruction No. 2 is as follows:

"The Court instructs the Jury that you should consider under plaintiffs' actions for malicious prosecution, whether or not the defendants, Montgomery Ward and Company and Leonard Fox, in detaining the plaintiff, Arthur Aldridge, causing his detention, arrest and subsequent imprisonment, acted in good faith and with honest intentions, and with prudence and proper caution.

"If you find from the evidence under the instructions of the Court that the defendants, Montgomery Ward

100

and Company and Leonard Fox, and each of them in detaining the plaintiff, Arthur Aldridge, caused his detention, arrest and subsequent imprisonment, and that in so doing they, or neither of said defendants acted in good faith, with honest intentions, and with prudence and proper caution, then you may assess punitive or exemplary damages against said defendants or any or either of them.''

██ Defendants criticize the instruction because, they say, it assumes that the two named defendants were guilty in causing the detention and arrest of plaintiff, thereby in effect directing a verdict on the issue of false imprisonment. As above indicated, a careful examination of the evidence discloses no substantial dispute upon any material point bearing on false imprisonment. The instruction therefore was not erroneous.

Defendants further urge there is a fatal inconsistency in the jury's action in returning a verdict of $2,500 against defendant Wards and $300 against defendant Fox. They say that if Wards is liable at all it must be by virtue of the agency of Fox, as the proof fails to satisfactorily establish the participation of the store manager or any other employee. They urge that it would be absurd to hold that one who has been injured by the act of an agent to a certain extent can be held to have been injured to a greater extent by the principal who is liable under the doctrine of *respondeat superior*. There is, accordingly, submitted for our determination a question that does not seem to have been heretofore passed upon by the courts of this State, namely, whether or not one liable under the doctrine of *respondeat superior* may be held in damages for a greater amount than the agent through whom the principal acted.

██ In this case both defendants were sued in separate counts of the same complaint. They were not sued in any count as joint tort-feasors. Separate

verdicts were submitted as to each defendant without objection, both defendants were found guilty, and verdicts in varying amounts returned. The liability of master and servant for the act of the servant is deemed that of one tort-feasor and is a consolidated or unified one. Where one party acting for himself and his employer causes the unwarranted arrest of a third person a single wrongful act is committed. *Sarine v. American Lumbermen's Mut. Casualty Co.*, 258 App. Div. 653, 17 N. Y. S. (2d) 754. If the employer and employee had here been sued jointly as they might legally have been, verdicts assessing damages against each could not have been permitted to stand for it has long been the law in this State a jury may not apportion damages among joint tort-feasors. If separate suits had been started against the principal and the agent and a recovery been had and satisfied against one, such satisfaction would operate as a discharge of the entire obligation. We do not interpret section 50 of the Practice Act as an attempt to change the substantive law of this State by permitting multiple recoveries against the principal and the agent through the device of suing each in separate counts of the same complaint. The Practice Act (sec. 50) merely liberalized the rules of pleading by permitting the introduction into a single suit of all parties in interest.

Defendants argue in view of these considerations that a verdict which awards a larger amount against the employer tort-feasor than against the employee tort-feasor should be set aside or reduced to the lesser amount. The case of *State v. Earley,* 240 Mo. App. 868, 219 S. W. (2d) 879, is cited in support of this proposition. The relationship there existing is that of principal and surety and a different legal principal applies than in the case of master and servant. The cases of *All v. Delaware & H. R. Corp.*, 176 Misc. 977, 29 N. Y. S. (2d) 439, 441, and *Ferne v. Chadderton,* 363 Pa. 191,

196, are master and servant cases but neither is supported by reasoning other than the bare statement that it would be an incongruity to permit a larger recovery against the master than against the employee. In the latter case the employee is referred to as the active tort-feasor, with the implication that the active party is more reprehensible than the passive.

 We do not see the logic or the justice of compelling a plaintiff to accept the lesser of two judgments where a single wrong is committed by a single entity—albeit a double faceted one, from either aspect of which it would have been liable for the maximum amount had a verdict for such amount been returned in a separate action. Particularly is this true where the employer is a corporation, in which case both employer and employee are active tort-feasors, as a corporation must of its nature *act* only through employees and agents. We are of the opinion that a more reasonable and equitable procedure dictates that in such a case the plaintiff be permitted an election as to which of the judgments he shall satisfy. This conclusion is supported by the holding in *Kirchner v. State,* 223 App. Div. 543, 228 N. Y. Supp. 718, where in separate actions against two tort-feasors the court held that, where concurring acts cause the injury and both defendants are responsible for the result, there be but one satisfaction but that the claimant be permitted to make choice of the better damages.

 Defendant Wards complains that the judgment against it is excessive and cites the case of *Horvat v. Opas,* 315 Ill. App. 229, an action for malicious prosecution where there was a verdict of $5,000, a remittitur of $3,000 in the trial court, and a reversal here on the ground that $2,000 was still grossly excessive. Analogous cases are not particularly helpful in measuring damages inasmuch as each case embodies a different set of facts and there is no rule of thumb

by which such unliquidated damages can be measured. In the instant case the plaintiff, a man of excellent reputation, holding a responsible position, who had never been accused or convicted of any crime, is without the slightest justification arrested, kept in custody for five hours, and thereafter held on entirely unwarranted charges which are later dismissed. The case was submitted to the jury on the question as to whether or not the conduct of the defendants was willful and malicious. Among the elements tending to establish such conduct are recklessness and want of probable cause. *Shelton v. Barry,* 328 Ill. App. 497. The evidence here indicated that by virtue of an arrangement between the defendant Wards and the police department the first "suspicious" man who sought to buy a cord of the kind required to operate the allegedly stolen radios would be arrested. The jury was entirely justified in concluding that such a course of action was reckless in the extreme and that as to plaintiff it was without probable cause. One of the elements in awarding punitive damages is that it act as a deterrent to future acts. We are unwilling to say that this verdict, under all the circumstances, is of such size as to be indicative of passion or prejudice. Furthermore we would not be justified in enforcing our conclusion as to what would be a proper amount of damages by requiring a remittitur. We think that the jury's verdict is within those elastic limits with which a reviewing court should not interfere.

Accordingly, the judgments of the superior court of Cook county are reversed and the cause is remanded with directions to enter a judgment upon whichever verdict the plaintiff may elect within five days after the filing of the remandment order in the trial court.

*Reversed and remanded with directions.*

ROBSON, P. J. and SCHWARTZ, J., concur.

104

Subsequent to the filing of the above opinion, the following order was entered.

## ORDER

On October 3, 1952, subsequent to the filing of the opinion in the above cause, motion was made by Appellants to vacate the judgment entered here on September 23, 1952, and for a rule on Appellee to elect here whether to have the $300.00 judgment against Leonard Fox or the $2500.00 judgment against Montgomery Ward & Co., Incorporated, which said motion is hereby granted. The above motion was made for the purpose of obviating the circuity of action involved in remanding the cause and also to remove any possible jurisdictional obstacle to Supreme Court review.

The parties, by their respective attorneys, have appeared before this Court and the Appellee has elected here to have judgment of $2500.00 against Montgomery Ward & Co., Incorporated. Wherefore the judgment heretofore entered by this Court on September 23, 1952 is vacated and set aside. The judgment below against Montgomery Ward & Co., Incorporated, in the sum of $2500.00 is affirmed, and the judgment below against Leonard Fox is reversed.

It is further ordered that Appellee recover of and from the Appellants his costs and that he have execution therefor.

> EDWIN A. ROBSON
> JOHN M. TUOHY
> ULYSSES S. SCHWARTZ
> Justices of the Second Division,
> Appellate Court, First District,
> Illinois.

Entered: October 10, 1952