Leo C. BURKE, Plaintiff-Appellee,

v.

NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Defendant-Appellant.

No. 137, Docket 25228.

United States Court of Appeals Second Circuit.

Argued Jan. 20, 1959.

Decided June 5, 1959.

Edmund J. Moore, New York City (Kenneth B. Morton, New York City, of counsel), for defendant-appellant.

Healy, Holmes & Healy, New York City (T. Donald Healy, New York City, of counsel), for plaintiff-appellee.

Before HAND and WATERMAN, Circuit Judges, and BYERS, District Judge.

## WATERMAN, Circuit Judge.

Plaintiff brought this action in the Southern District of New York seeking to recover damages for an alleged false arrest and imprisonment by defendant on February 13, 1953 in Stamford, Connecticut. After a trial without a jury a judgment was entered in plaintiff's favor for $2,250, and defendant brings this appeal.

Early in 1953 information was received by one McAuliffe, a captain of defendant's police department, concerning improper selling of defendant's tickets. McAuliffe assigned one of his detectives, Currivan, to investigate. As a result of that investigation a statement was obtained from "Gunboat" Smith to the effect that plaintiff, a ticket collector for defendant, had on two occasions illegally sold Smith bundles of railroad tickets. These sales were supposed to have taken place in December 1952 and January 1953 aboard one of defendant's trains running from New York to Bridgeport, Connecticut. On February 11, 1953 McAuliffe presented the Smith statement to Captain Lynch of the Stamford Police Department. After reading it Lynch sent one of his men, Sergeant Genovese, along with McAuliffe, to see the prosecuting attorney. The latter read the statement, and, using a printed form with blanks therein, filled out an information. In doing so he crossed out the words "day of ——— A.D. 19— at and within said City of Stamford," they being in the form for the purpose of stating the time and place of the offense. On the form he wrote "Leo C. Burke did violate Sec. 8402 of the Gen Statute of the State of Conn in that he did embezz—ticket of the New York New Haven Rail Road Company."[1] No refer-

---

[1] The information and the attached warrant read as follows:

State of Connecticut ⎰ ss. City of
County of Fairfield ⎱ Stamford

To the Honorable, The City Court of Stamford, holden within and for the City of Stamford, in said County, comes the Prosecuting Attorney or Asst. Prosecuting Attorney in and for said City of Stamford, and on his oath of office complaint and information makes, that on the *Jan. 1—1951 to (indecipherable handwritten date)* day of A.D. 19 at and within said City of Stamford, *Leo C. Burke did violate Sec. 8402 of the Gen Statute of the State of Conn in that he did steal or embezz—ticket of New York, New Haven Rail Road Company*

And said Prosecuting Attorney or Asst. Prosecuting Attorney prays process against the said accused and that said accused may be arrested and held to answer to this complaint and information, and be thereon dealt with according to law.

ence was made in the information as to where the alleged crime was supposed to have taken place. On the basis of this information a City Judge signed the printed warrant form attached to the information form. Arrangements were then made whereby McAuliffe would notify Lynch when plaintiff was in Stamford. On the morning of February 13, 1953 Lynch was so notified, and he met Currivan at defendant's station where the latter identified plaintiff. The evidence is contradictory as to what happened in the railroad station, but the district court found that while plaintiff was standing at a lunch counter there Lynch and Currivan each grasped an arm from behind. Telling plaintiff that they were taking him to police headquarters they marched him outside, with his arms still pinioned, to a police car in which he was driven to the police station house. There is no evidence to indicate that Currivan acted at Lynch's request. At the police station Genovese took the warrant out of his desk, showed it to plaintiff and stated the nature of the charge. Currivan then went to Bridgeport to get Smith who identified plaintiff. At nine o'clock that night plaintiff was released on bail. Subsequently, with permission of the court, the complaint was withdrawn "for lack of evidence as to Jurisdiction."

Federal jurisdiction here is based on diversity of citizenship. The activities complained of took place in Connecticut. Applying New York conflict of laws rules, as we must, Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, we look to Connecticut law for the answers to defendant's contentions. Cherwien v. Geiter, 1936, 272 N.Y. 165, 5 N.E.2d 185; Metcalf v. Reynolds, 1935, 267 N.Y. 52, 195 N.E. 681; Conklin v. Canadian-Colonial Airways, Inc., 1935, 266 N.Y. 244, 194 N.E. 692; M. Salimoff & Co. v. Standard Oil Co., 1933, 262 N. Y. 220, 186 N.E. 679, 89 A.L.R. 345; Loucks v. Standard Oil Co., 1918, 224 N.Y. 99, 120 N.E. 198.

The first and main point defendant presents on this appeal involves the question of whether Lynch was authorized to make the arrest. If he was, then of course no liability can attach to defendant for the assistance given Lynch by defendant's servants. McKenna v. Whipple, 1922, 97 Conn. 695, 118 A. 40; Dehm v. Hinman, 1887, 56 Conn. 320, 15 A. 741, 1 L.R.A. 374; Hall v. Howd, 1835, 10 Conn. 514. In support of its position, defendant contends first that the warrant was such that a police officer might properly rely on it in making an arrest, and second that, in any event, Lynch was authorized to arrest without a warrant. The district court disagreed with both of these contentions, and we think it was correct in doing so.

With respect to the first contention, we do not think that the warrant was in a form sufficient to protect those who committed the arrest and imprisonment. The issuing court was of limited jurisdiction, Connecticut General Statutes, § 54–6 (1958 Revision),[2] and,

Dated at Stamford, this *11* day of *Feb. 1953*
*(Properly Signed)*
~~Asst.~~ Prosecuting Attorney
State of Connecticut, ss. Fairfield County
To the Sheriff. of Fairfield County, his Deputy, or either of the Constables of the City of Stamford, within said County, and to any Policeman of the City of Stamford, within said County—GREETING:
BY AUTHORITY OF THE STATE OF CONNECTICUT, You are hereby commanded to arrest the bod of the within named accused and forthwith have said accused before The City Court of Stamford in said City of Stamford, to answer the charges alleged in the foregoing complaint of the Prosecuting Attorney or Asst. Prosecuting Attorney in and for said City of Stamford, and be dealt with thereon as the law directs.
Hereof fail not, but of this warrant service and return make according to law.
Dated at Stamford, the day of 19
BY THE COURT:
*(Properly signed)* Judge.
(Material in italics indicates handwriting as distinguished from printed portion.)

2. Sec. 54–6 reads as follows:
"Sec. 54–6. Criminal jurisdiction of municipal courts. In any town, city, borough or district having a population

accordingly, should have described the conduct involved with sufficient specificity so that a person reading the warrant would know that the court had acted within its authority in issuing it. Hall v. Howd, 1835, 10 Conn. 514; Restatement of Torts § 123, comments b, 2 and c (1934); Wharton's Criminal Law and Procedure, Vol. 4, p. 232 (Anderson 1957). As was said in Hall v. Howd, supra:

"It is a well established principle that when a magistrate or other officer, having a special and limited jurisdiction, issues a warrant to take the person or property of another, he must shew, upon the face of his proceedings, that he has jurisdiction. Nothing will be intended in his favour."

If the words "at and within said City of Stamford" had not been deleted or if the warrant had made reference to section 54–77, Connecticut General Statutes (1958 Revision),[3] and the fact that the alleged offense was supposed to have taken place upon a train, we might agree with defendant's contention. The warrant then would have been regular in

form, and, at the least, fair on its face and sufficient protection for an arresting officer. McGann v. Allen, 1926, 105 Conn. 177, 134 A. 810. See Aetna Ins. Co. v. Blumenthal, 1943, 129 Conn. 545, 29 A.2d 751. However, in the form in which it was issued we do not think it afforded the protection defendant claims. Since we reach this result we need not consider what appears to be plaintiff's alternative argument—that to derive any benefit from the warrant Lynch had to have it with him when he made the arrest.

 Defendant's second contention is equally without merit. In order to arrest without a warrant an officer must comply with the statutory requirements, Sims v. Smith, 1932, 115 Conn. 279, 161 A. 239, 240. Those requirements are that the "person [to be arrested be] taken or apprehended in the act or on the speedy information of others" or when the arresting "officer has reasonable grounds to believe [that that person] committed or is committing a felony." Connecticut General Statutes, § 6–49 (1958 Revision).[4] With respect to the

of fifteen thousand or more as determined by the last federal census, any municipal court having criminal jurisdiction shall have jurisdiction of all crimes and misdemeanors committed within the territorial limits of such town, city, borough or district and of all violations of ordinances, bylaws and regulations of such town, city, borough or district and shall have final jurisdiction, subject to appeal, of all crimes and misdemeanors wherein the penalty provided does not exceed a fine of five hundred dollars or imprisonment for one year or both. In any town, city, borough or district having a population of less than fifteen thousand as determined by such federal census, any municipal court having criminal jurisdiction shall have jurisdiction of all crimes and misdemeanors committed within the territorial limits of such town, city, borough or district and of all violations of ordinances, bylaws and regulations of such town, city, borough or district and shall have final jurisdiction, subject to appeal, of all crimes wherein the penalty provided shall not exceed a fine of two hundred and fifty dollars or

imprisonment for six months or both. The jurisdiction provided for in section 54–7 is conferred upon all municipal courts having criminal jurisdiction. (1949 Rev., S. 7579; 1953, June, 1955, S. 3096d.)"
See also footnote 3.

3. Sec. 54–77 reads as follows:
"Sec. 54–77. Venue. Each person charged with any offense shall be tried in the county wherein it was committed, except when it is otherwise provided; and, when theft is committed in one county and the property stolen is carried into another county, the offender may be tried in either county. Any person arrested for an offense committed upon a car or steamboat may be prosecuted before any court in the same manner as if such offense had been committed in the town in which such court is held. (1949 Rev., S. 8793.)"

4. Sec. 6–49 reads as follows:
"Sec. 6–49. Arrest without warrant. Sheriffs, deputy sheriffs, county detectives, constables, borough bailiffs, police officers, special protectors of fish and game and railroad and steamboat police-

first part of this section, the Supreme Court of Errors said in Sims v. Smith, supra:

> "The right to arrest without a warrant had its origin in the necessity of preventing the escape of offenders during the period of delay incident to the procuring of warrants. When there is time to procure a warrant without danger of the escape of the offender an arrest should not be made without it. Our statute effectuates that result by requiring a warrant except when the offender is apprehended in the act or upon a speedy information, in which cases ordinarily there would be no opportunity to obtain a warrant."

Similarly, in State v. Carroll, 1944, 131 Conn. 224, 38 A.2d 798, 799, the Court interpreted the provision regarding "speedy information of others" as meaning that an officer can make an arrest when he "has received *promptly*, after the commission of a crime, information, which he has reasonable ground to accept as true, that the person he is arresting was concerned in it." (Emphasis added.) In our case, while the alleged criminal acts were supposed to have taken place in December 1952 and January 1953, and the police were notified on February 11, 1953, the arrest did not take place until February 13,

1953. The police had time to obtain a warrant, and did so. After such a passage of time we cannot say that the officer acted on the speedy information of others. Nor can defendant get any benefit from that portion of Connecticut General Statutes § 6–49 (1958 Revision) which provides that an officer can arrest without a warrant when he has reasonable grounds to believe a felony has been committed, for the crime with which plaintiff was charged was only a misdemeanor. Connecticut General Statutes, §§ 1–1, 53–64 (1958 Revision).[5]

 As an alternative to its first point, defendant contends that the district court erred in finding that Currivan participated in the actual apprehension of plaintiff in the railroad station, and that defendant's servants merely made the available facts known to the proper officials. We agree that a person who does nothing more than supply information upon which a warrant of arrest is to be issued cannot be held liable for false imprisonment if that warrant is issued in an invalid form. Prosser on Torts, p. 51 (2d ed. 1955); Restatement of Torts § 37, comment b (1934). But we do not agree that that was all defendant's servants did. The district court was not clearly in error in finding that Currivan participated in the actual apprehension, and that that participation, together with defendant's servants'

men, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when such person is taken or apprehended in the act or on the speedy information of others, and members of the state police department or of an organized local police department or county detectives shall arrest, without previous complaint and warrant, any person who such officer has reasonable grounds to believe has committed or is committing a felony. Any person so arrested shall be presented with reasonable promptness before proper authority. (1949 Rev., S. 465; 1953, S. 195d.)"

5. The pertinent portion of Sec. 1–1 reads as follows:

 * * * * *

"Any crime punishable by death or imprisonment for more than one year

shall be deemed a felony, and any other crime, unless designated a felony by statute, shall be deemed a misdemeanor."

Sec. 53–64 reads as follows:

"Sec. 53–64. Theft, counterfeiting or embezzlement of passage tickets. Any person who steals any ticket, coupon, check or other paper or writing, lawfully issued by any common carrier, entitling or purporting to entitle the holder or proprietor thereof to a passage upon any railroad or in any vessel or other public conveyance or falsely makes, alters, forges or counterfeits any such coupon, check or other paper or writing or embezzles any such ticket, coupon, check or other paper or writing, shall be fined not more than five hundred dollars or imprisoned not more than one year or both. (1949 Rev., S. 8402.)"

**900**

other acts, made the "employees * * * active participants at every phase of the entire proceeding." Defendant, through its servants, was far more than just a private prosecutor, and, in our opinion, the district court was correct in imposing liability. Cf. Clyma v. Kennedy, 1894, 64 Conn. 310, 29 A. 539; see Dehm v. Hinman, 1887, 56 Conn. 320, 15 A. 741, 1 L.R.A. 374.

Lastly, defendant contends that the judgment awarded was excessive. We have the right to review findings as to the amount of damages in cases tried without a jury. Marino v. United States, 2 Cir., 1956, 234 F.2d 317; United States v. Lawter, 5 Cir., 1955, 219 F.2d 559; Sanders v. Leech, 5 Cir., 1946, 158 F.2d 486. However, we cannot say that here the district court was clearly in error.

Judgment affirmed.