Lawrence BUTLER et al., Plaintiffs,

v.

GOLDBLATT BROS., INC., et al., Defendants.

No. 74 C 3000.

United States District Court, N. D. Illinois, E. D.

April 15, 1977.

As Modified May 5, 1977.

John C. Hendrickson, H. Ayres Moore, Chicago, Ill., for plaintiffs.

Richard L. Curry, Kenneth J. Cortesi, Asst. Corp. Counsel, Julius L. Sherwin, Sherwin & Sherwin, Bernard Rosencranz, Chicago, Ill., for defendants.

MEMORANDUM OPINION

DECKER, District Judge.

*I. Background*

This action arises out of the warrantless arrest[1] on September 25, 1974, of the eight plaintiffs[2] for conspiracy to commit murder. The allegations of the complaint have been summarized in detail in this court's memorandum opinion of January 27, 1976.

In brief, the plaintiffs charge that defendant Walker transmitted to the police the false report of a private informant employed by Goldblatts, since revealed to be defendant Wayne Young, that the plaintiffs were conspiring to murder him through the instrumentality of a social club in the event that he would testify at a criminal proceeding against another Goldblatts' truck driver. Six days later, following Walker's testimony at that hearing, Walker reported that he had been verbally threatened by one of the plaintiffs, Ernest Lewis. Lewis was promptly arrested, and the other plaintiffs were shortly thereafter either arrested or brought to police headquarters for questioning. The charge of intimidation brought against Lewis was subsequently stricken with leave to reinstate. No criminal charges were ever brought against any of the other plaintiffs, who were all released by 2:00 A.M. on September 26th.

The plaintiffs assert that the defendant police officers ("police defendants") conspired with Walker, Young, Thomas Marsh, the Chief of Goldblatts' Special Service Division, and Dennis McFarland, another employee of that division, and Goldblatts itself (to be collectively called "Goldblatts' defendants") to effect the above arrests.

The suit is in four counts: the first alleges that the defendants acted in violation of 42 U.S.C. § 1983, under color of law to deprive plaintiffs of their constitutional rights; the second count alleges a conspiracy to deprive plaintiffs of equal protection and of their privileges and immunities under the law in violation of 42 U.S.C. § 1985(3); counts three and four are pendent state claims for false arrest and false imprisonment and defamation.

There are now pending before the court two motions for partial summary judgment filed by the plaintiffs. The first seeks summary judgment on liability against the police defendants on Count I (§ 1983—due process) and Count III (the state claim for false arrest and false imprisonment). The second motion seeks partial summary judgment on liability against the Goldblatts' defendants on Count III.

*II. Plaintiffs' Motion Against the Police Defendants*

After extensive discovery certain undisputed facts are found in the record. All of the plaintiffs, except Cecil Davis, were formally arrested on September 25th. No warrants were ever obtained, nor were any complaints sworn out prior to the arrests.

The police agree that they were initially contacted in this matter by Marsh and Walker on September 19th. The Goldblatts' security employees stated that an informant had provided them with information regarding an assassination attempt to be made on Walker should he testify on September 25th, against Jesse Green, a Goldblatts' employee charged with grand theft. Marsh and Walker refused to identify their informant. The informant was said to have reported that the plaintiffs had taken up a collection to hire a "hit man" to commit the murder.

Walker was under police surveillance when he testified on September 25th. He reported to the police that Ernest Lewis grabbed him by the arm when he was leaving the courthouse and said, "That's it for you." Although the police officers guarding Walker did not see this incident, they arrested Lewis. Walker safely left the area

---

1. The defendants deny that plaintiff Cecil Davis, who was brought in to police headquarters for questioning, was actually arrested.

2. All of the plaintiffs, except Ernest Lewis, were employees of Goldblatt Brothers, Inc., a Chicago department store chain. Plaintiff Nathan Nash has since died, and his administrator has been substituted as plaintiff in Counts I–III.

of the courthouse in his own vehicle, and was kept under police surveillance.

The police then made the decision to arrest the other plaintiffs. The police did not learn of the identity of the informer, nor did they interview him, until after this decision was made and after the arrests had begun.

■ The police defendants appear to base their defense upon an assertion of their "good faith" in making the arrests. The leading Seventh Circuit case of *Joseph v. Rowlen,* 402 F.2d 367 (7th Cir. 1968), permits a good faith defense for a warrantless arrest only where the police officers can demonstrate that they had a reasonable belief that there was probable cause for the arrest. The mere assertion that the police thought they had probable cause is insufficient. *Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir. 1975). Thus the police defendants can escape liability for a warrantless arrest only by establishing that they reasonably believed that they had probable cause.

■ The undisputed facts of the case indicate that these arrests were based solely upon the hearsay recounting of the report of an unidentified private informant, and upon Walker's narration of Lewis' remark.

The court does find that there is a genuine factual dispute as to whether there was probable cause to arrest Lewis on the basis of Walker's claim that he had just been threatened.

The police were familiar with Walker as a reliable individual who had previously provided accurate information leading to convictions. The words purportedly uttered by Lewis might be construed as an immediate threat, particularly in light of Walker's earlier assertions that he had heard of a plot upon his life. It is true that the officers guarding Walker had not witnessed this interchange, but they apparently did not doubt that it could have taken place while they were not looking.

This is not to say that these circumstances clearly justified an immediate arrest. The possibility that Walker had been threatened with imminent harm must be balanced against the fact that he was being guarded by the police. Since Lewis did not pursue Walker, the police had a chance to obtain a warrant, while guarding Walker from possible harm. Furthermore, the reliability of Walker's information must be weighed against the ambiguity of the remark. Whether the entirety of these circumstances provided the police with probable cause to arrest Lewis is therefore a factual question to be resolved by a jury.

The basis for the arrests of the other plaintiffs, however, differs markedly from that of Lewis. While Lewis was arrested upon the immediate report of a perceived threat by a direct witness, the other plaintiffs were connected to the purported conspiracy only by the unverified charge of an unknown informant. In the six days since this hearsay had been presented to the police, the law enforcement officials had attempted no investigation of its veracity. Unlike the case of Lewis, no new report of actual incriminating conduct had been brought against these plaintiffs.

■ Under Illinois law, "arresting officers may have reasonable grounds for believing a defendant was committing a crime based upon information supplied by an informant *if the reliability of the informant has been previously established or independently corroborated." People v. McCray,* 33 Ill.2d 66, 70, 210 N.E.2d 161, 163 (1965) (emphasis added). The Illinois Supreme Court went on to note that "information obtained from a source unknown to the police officer is not sufficient in itself to establish such reasonable grounds for belief as to justify an arrest and incidental search without a warrant."

This accords with the principle that a magistrate cannot issue a warrant without information "from which the officer concluded that the informant . . . was 'credible' or his information 'reliable'." *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964).

While the police may have had reason to trust the reliability of Walker, because he

had previously supplied information that had proved accurate, they had no basis for such confidence in the unnamed informant.

■ The police defendants apparently recognize that the arrests cannot be justified upon the reliability of the informant. They thus state that "it was not the informant that provided the information concerning the plot to kill Mr. Walker but rather Mr. Walker himself and Mr. Marsh". This does not cure the unreliability of the story. Walker and Marsh lacked first-hand knowledge of the truth of their information. There is no shortcut to probable cause. It can be no more obtained by filtering a second-hand tale through a well-known informant than will pure hearsay become admissible because the witness has a reputation for honesty.

Furthermore, it is not without significance that the police defendants failed for six days to either investigate the charges against the plaintiffs, or attempt to secure a warrant.[3]

It appears that the police initially sought the name of the informant. This, in itself, indicates that they were aware of the importance of confirming his reliability. The failure to pursue this inquiry, or to otherwise substantiate the story indicates that the police did not feel that the Walker hearsay justified any immediate action. Yet it remains true that the evidence against these plaintiffs was no greater at the time of the arrest than on September 19th, when Walker first approached the police. Lewis' purported threat could have no bearing upon these individuals unless the story linking all the defendants in a conspiracy had some independent credibility.

■ The court must conclude as a matter of law that these arrests were not founded upon probable cause, and that the defendant police officers could not reasonably believe that there was probable cause for

these arrests. As a result, the court must conclude that plaintiffs Butler, Jenkins, James, Jackson, and the two Nashes were deprived of due process of the law.

■ As noted above, the defendants deny that plaintiff Cecil Davis was ever arrested. They concede that he was stopped at the Goldblatts' warehouse and brought in to police headquarters for questioning. Although the police did not formally label this an arrest, under Illinois law an arrest occurs when there is "submission to custody". Ill.Rev.Stat. ch. 38 § 107–5(a). The questioning of Cecil Davis could not be exempted as "temporary questioning without arrest" under Ill.Rev.Stat. ch. 38 § 107–14 since it was not "conducted in the vicinity of where the person was stopped".

This issue is the only basis upon which the claims of Cecil Davis can be distinguished from those of the six plaintiffs whose civil rights were clearly violated by the conduct of the police defendants.

■ It is, of course, highly plausible that Davis had submitted to custody by acceding to a direction to leave work to undergo stationhouse questioning. Still the fact of an arrest remains a dispute that cannot be resolved by summary judgment in this case.

The recent case of *People v. Wipfler*, 37 Ill.App.3d 400, 346 N.E.2d 41 (3d Dist. 1976), attempted to define the circumstances under which stationhouse interrogation constitutes an arrest under Illinois law. The court held that "simply by acceding to a police request to come to the station to answer some questions, defendant was not thereby under arrest", at 403, 346 N.E.2d at 44. This court imposed a standard of whether "a reasonable, innocent man, would . . . have felt himself under arrest or in any significant way restrained in his freedom", at 403–04, 346 N.E.2d at 44. The court stressed that the essential issue was whether a reasonable man would

---

**3.** This delay would deprive the defendants of any claim that exigent circumstances compelled a warrantless arrest. The recent case of *U. S. v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), casts some doubt as to whether police must show such urgency, so

long as probable cause exists for the arrest. While the facts of this case may otherwise distinguish *Watson*, it is not necessary to base this decision on the exigent circumstances theory, since the undisputed facts reveal no probable cause.

feel constrained, rather than the subjective feelings of the actual interrogatee. The court also viewed "[t]he communication of an intent to arrest, on the part of an officer" as a critical factor, and relied heavily upon the fact that the police did not suggest or say that the defendant had to stay, at 404, 346 N.E.2d at 44.

The facts of *Wipfler* may be somewhat distinguished from Davis' case since Wipfler was not physically brought to the station by the police but went in response to a message passed on by his mother that "they simply wished to ask [him] some questions about some burglaries", at 402, 346 N.E.2d at 43. While this may be a significant difference, the application of the "reasonable man" standard is one for the jury and precludes summary judgment for plaintiff Cecil Davis against the police defendants.

### III. Plaintiffs' Claims Against the Goldblatts' Defendants

■ Since the case of *Dodds v. Board,* 43 Ill. 95 (1867), Illinois law has held that a private citizen who procures an arrest must prove the guilt of the person arrested or be liable for false imprisonment. The plaintiffs' motion for summary judgment asserts that the undisputed facts reveal that the Goldblatts' defendants "procured" their arrest, and are therefore liable as a matter of law on the pendent count based on false arrest.

In support of their motion they note that the Goldblatts' defendants have stipulated that they "are the only persons who ever, at any time, stated to the police that the Plaintiffs were engaged in a conspiracy to murder Walker". As noted, *supra,* the police also stress that the decision to make the arrests was based on the statements of Marsh and Walker relating the observations of the informer, Wayne Young. The plaintiffs also point out that Goldblatts' defendant McFarland went with the police officers in a police vehicle in search of plaintiff James Nash, and that the Goldblatts' defendants allowed the police on company property in order to make the arrests, and assisted in the identification of the plaintiffs.

The plaintiffs rely heavily on the language of the Seventh Circuit in *Odorizzi v. A. O. Smith Corporation,* 452 F.2d 229, 231 (7th Cir. 1971) (affirming judgment n. o. v. for defendants in false imprisonment action), to the effect that

> "In Illinois cases holding a private party guilty of false imprisonment, the defendant has either directed an officer to arrest the plaintiff *or has procured the arrest by giving information which was the sole basis for the arrest.*" (Emphasis added.)

The plaintiffs argue rather effectively that the Goldblatts' defendants fall within this language since it is undisputed that they provided the sole source of information leading to these arrests. Except for quotation of language from *Odorizzi* that "giving information to police in itself is insufficient to constitute participation in an arrest", 452 F.2d at 232, the Goldblatts' defendants do not really attempt to counter plaintiffs' theory of the law.

■ Nonetheless, it seems improbable that merely providing the only information leading to an arrest which was not followed by a criminal conviction could by itself establish liability for false arrest. Good citizenship requires that individuals having knowledge of facts relating to possible criminal activities should contact the police.[4] Of course, before making an ar-

---

4. In *Enright v. Gibson,* 219 Ill. 550, 554, 76 N.E. 689, 691 (1906), there is language that "[i]f the citizen knows a crime has been committed it is his duty to appear before a magistrate and make a complaint, in which he states that the crime has been committed, and in which he may state, upon reasonable information and belief, that the party named is the guilty party". The court goes on to state that the magistrate will give the warrant to the law enforcement officers, and warns that private citizens should not avoid these formalities of law by constituting himself as officer and jailer. This language reappears in *Lindquist v. Friedman's Inc.,* 366 Ill. 232, 236, 8 N.E.2d 625 (1937), and more recently in *Green v. No. 35 Check Exchange, Inc.,* 77 Ill.App.2d 25, 30, 222 N.E.2d 133 (1st Dist. 1966). The gist of this passage is that private citizens should avoid risk of liability by deferring the task of effecting an arrest to

rest, the police should either obtain a warrant or find probable cause. But the citizen confiding in the police should not be subjected to liability merely because the officers were hasty and failed to follow the rules. Nor should the law place a good citizen in jeopardy merely because of the manner in which he phrased his report. Liability should not lie on technicalities such as the difference between "you might want to consider my evidence" and "here is what I heard." [5]

A review of Illinois law substantiates the belief that more is required to establish liability for false arrest or imprisonment than the bare provision of information which turns out to be the sole evidence relied upon in an unlawful arrest.

The court cannot find any case in which liability was established on the basis of such limited conduct. In each case liability rested upon a direct or implied command [6] given to the police to make an arrest, or upon some unjustified participation in the arrest.

Thus, although the defendant did not expressly request the police to arrest the plaintiff in *Aldridge v. Fox*, 348 Ill.App. 96, 108 N.E.2d 139 (1st Dist. 1952), he was liable because he had detained the plaintiff by trickery until the arrival of the police and then stated "there is your man". Other prominent Illinois cases pose still greater factual disparity from plaintiffs' case for summary judgment.[7] In *Enright v. Gibson*, 219 Ill. 550, 76 N.E. 689 (1906), the defendant "directed" the officer to make the arrest, and then accompanied the plaintiff to the police station. In *Ferrell v. Livingston*,

344 Ill.App. 488, 101 N.E.2d 599 (1st Dist. 1951), the defendant directed the police officer to "lock up plaintiff, whereupon plaintiff was taken to the police station and remained there until the next day", at 494, 101 N.E.2d at 602.

Most importantly, the same type of conduct underlay the judgment against the private defendants in *Green v. No. 35 Check Exchange, Inc.,* 77 Ill.App.2d 25, 222 N.E.2d 133 (1st Dist. 1966). In that case the president of the check exchange told an employee "to call the police and have the plaintiff arrested". When the police arrived, the employee told them "she had a man in the lobby who had cashed a forged or bad check with her". The police officer testified that the employee told him that the plaintiff was "to be locked up because he was the same man who had cashed the bad check", at 31, 222 N.E.2d at 136. Thus, while the officer did testify that "he relied solely on what she and the other clerks told him", it was clear that the defendants went beyond the providing of information, and also actually requested and obtained an immediate arrest.

As noted *supra,* the plaintiffs' case for summary judgment relies heavily upon the passage from *Odorizzi* which states that Illinois law will find liability for "giving information which was the sole basis for the arrest". It is significant that this quote refers to *Green v. No. 35 Check Exchange, Inc.* A careful reading of the facts of this state court case reveals that it was inaccurate to phrase the basis of liability in the

---

the proper authorities. There appears to be no justification to view it as holding that a mere complaint may be the basis of liability for false arrest solely because it is made before police officers rather than a magistrate.

5. Otherwise the police might have to provide the equivalent of *Miranda* warnings to would-be informants, warning them of the possible liability that might ensue in the event that action were taken upon their information.

6. Various verbs have been utilized without great success to define the type of *conduct* which will sustain a false imprisonment action. In *Odorizzi, supra,* the court referred to "procuring" an arrest. In 35 C.J.S. False Imprison-

ment § 24 one who "directs or requests" an arrest may be liable. In *Palmentere v. Campbell,* 344 F.2d 234, 238 (8th Cir. 1965), the court found that one could be liable if he "directed, advised, countenanced, encouraged, or instigated" the arrest.

7. *Lindquist v. Friedman's Inc.,* 366 Ill. 232, 236, 8 N.E.2d 625 (1937), is apparently another case where liability was sustained against private citizens despite the absence of any express request for an arrest. However, the opinion appears to be based on the finding that the defendants restrained the plaintiffs in their store until the arrival of the police.

disjunctive (directing arrest or giving the sole information leading to arrest). The case does not stand for a finding of liability based on a simple complaint. In any event, this passage from *Odorizzi* is unessential dictum to the result. Illinois law is more accurately stated in the latter quote cited by the Goldblatts' defendants.

This is in accord with the general principles of tort law as applied by courts throughout the country.

In *Armstead v. Escobedo*, 488 F.2d 509 (5th Cir. 1974), the plaintiff was unjustly arrested when a bus driver erroneously identified him to the police as an individual who had previously threatened him with a knife and threw a brick at his bus. This was the sole grounds for the arrest. Applying Texas law, the court noted that "a private citizen does not incur liability simply because he mistakenly informs the police that the suspect has committed a crime whenever the suspect is not thereafter successfully prosecuted. . . . Rather, the citizen must actually *direct* the police to make the arrest", at 511 (emphasis in original).

This was the same result that was reached in *Alvey v. United Airlines, Inc.*, 161 U.S.App.D.C. 112, 494 F.2d 1031 (1974). In that case a stewardess identified the plaintiff to a deputy sheriff as a person who had upset passengers on the plane when he spoke about a bomb and then jumped up and left his seat. The sheriff's deputies then detained, and possibly arrested, the plaintiff. The court concluded that United was not liable for this "arrest", finding that "the arrest was made wholly on the initiative of the sheriff's men", 494 F.2d at 1033.[8]

In *Stueber v. Admiral Corporation*, 171 F.2d 777, 780 (7th Cir. 1949), the Seventh Circuit cited language from *Chesapeake &*

*Potomac Tel. Co. v. Lewis*, 69 App.D.C. 191, 99 F.2d 424, 425 (1938), with similar import:

" 'Mere information to the officers of the law by a citizen, tending to show that an offense has been committed and that some person named may be suspected of its commission, is not sufficient, of itself, to warrant the inference that the informer or his agents participated in the unlawful arrest and imprisonment of the accused by the officer.' "

A review of other authorities buttresses this court's conclusion that summary judgment cannot be based on those facts which are undisputed in this case. It is stated at 35 C.J.S. False Imprisonment § 24 that "[o]ne who merely gives information regarding an offense justifying arrest does not incur liability, even though the party giving the information acted maliciously or without probable cause."[9]

Elsewhere in this same section the general rule is stated that "[a]n individual who directs or requests an illegal arrest is liable for false imprisonment, but one who merely gives information regarding an offense does not incur liability." In expanding upon this rule, it is noted that "[w]hat is a direction or request sufficient to impose liability within the meaning of this rule depends on the facts of each case". This concept is repeated at 35 C.J.S. False Imprisonment § 38 where it is stated that "[n]o fixed set of rules can be laid down with which to measure acts constituting instigation of an arrest, for each case must be decided on the particular facts thereof and the inferences to be drawn therefrom."

The practical effect of this concept is that summary judgment is inapposite where there exists a question of fact regarding the exact connection between the conduct of the police and the activities of the complainant. *Fine v. Paramount Pictures*, 171

---

**8.** Similar language may be found in the opinion of Judge Waterman in *Burke v. New York, New Haven & Hartford R.R. Co.*, 267 F.2d 894 (2d Cir. 1959), "We agree that a person who does nothing more than supply information upon which a warrant of arrest is to be issued cannot be held liable for false imprisonment if that warrant is issued in an invalid form. Pros-

ser on Torts, p. 51 (2d ed. 1955); Restatement of Torts § 37, comment b (1934)." 267 F.2d at 899.

**9.** The black letter law is similarly stated at I.L.P. False Imprisonment § 6, which draws upon *Steuber v. Admiral Corp., supra.*

F.2d 571 (7th Cir. 1948) (motion of defendants for summary judgment denied).

The court is also aware that the plaintiffs' motion for summary judgment is based on more than the allegations that the Goldblatts' defendants provided the information leading to these arrests. Plaintiffs argue that the undisputed facts show that these defendants permitted the police to wait on Goldblatts' property for nearly six hours to effectuate the arrests, and diligently assisted in identifying the plaintiffs to the officers.

Illinois follows the general rule, stated in 35 C.J.S. False Imprisonment § 24 that "[a]n individual incurs liability for an arrest without process, if going beyond merely giving information he participates in making an arrest which turns out to have been unlawful." I.L.P. False Imprisonment § 6,[10] *Dear v. Locke,* 128 Ill.App.2d 356, 364, 262 N.E.2d 27 (2d Dist. 1970). However, it is also true that "[w]hat constitutes participation depends on the facts and circumstances of each case." 35 C.J.S. False Imprisonment § 28b.(c). It is also true that, under some circumstances, persons participating in making an arrest at the request of the police may be safe from liability for false arrest. 35 C.J.S. False Imprisonment § 43.

Although the court does have some undisputed information regarding the extent of participation by the Goldblatts' defendants in the arrests, it is not sufficient for a determination of this cause. It is not certain whether the Goldblatts' defendants volunteered their assistance in the arrests, or did nothing more than accede to police instructions. Summary judgment therefore is inappropriate.[11]

*IV. Summary*

Since there remain genuine issues of material fact, the motion of plaintiffs Ernest Lewis and Cecil Davis for summary judgment against the defendant police officers on the issue of liability in Count I and Count III is hereby denied.

The motion of plaintiffs Lawrence Butler, Ron Jackson, Charles James, Monroe Jenkins, James Nash and Ralph Dixon, as administrator of the estate of Nathan Nash, for summary judgment against the defendant police officers on the issue of liability in Count I and Count III is hereby ordered granted.

The motion of all the plaintiffs for summary judgment against defendants Goldblatt Brothers, Inc., Thomas Marsh, Dennis McFarland, Andre Walker, and Wayne Young (the Goldblatt defendants) on the issue of liability in Count III is hereby denied.

---

10. I.L.P. gives the black letter law as follows, "A person is not liable for false imprisonment unless he personally participated therein by direct act or by indirect procurement."

11. The argument of the Goldblatts' defendants that they cannot be liable for conduct under color of state law has been previously discussed and rejected by this court. The court has previously determined that Count III is a properly pendent count to the § 1983 claim of Count I. This being the case, there is no reason whatsoever why this court cannot resolve Count III on its merits at the appropriate time.