**Linda BALTZ, Plaintiff,**

**v.**

**The COUNTY OF WILL, a Governmental Entity; John H. Shelley, individually and as Sheriff of Will County; William N. Hilger, individually and as an Agent and Employee of Will County; Craig Butkovick, individually and as a Deputy Sheriff of Will County; and Paul Kaupus, individually and as a Deputy Sheriff of Will County, Defendants.**

No. 84 C 2198.

United States District Court, N.D. Illinois, E.D.

Feb. 21, 1985.

moter or a person on whose behalf the sale was made.

John P. DeRose, Chicago, Ill., for plaintiff.

William W. Kurnik, Kurnik & Gipolla, Arlington Heights, Ill., Neil K. Quinn/Terri R. Olian, Pretzel & Stouffer, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Linda Baltz ("Baltz"), a Will County Deputy Sheriff, brought this suit under the Civil Rights Act of 1871, 42 U.S.C. § 1983, against Will County Sheriff John Shelley ("the Sheriff"), two deputy sheriffs, Craig Butkovick ("Butkovick") and Paul Kaupus ("Kaupus"), Will County ("the County") and a private psychiatrist, Dr. William Hilger ("Dr. Hilger"). Before the Court are motions to dismiss filed by the several defendants. For the reasons stated below, the Court grants the County's motion, denies Dr. Hilger's motion and grants the Sheriff's motion in part.

We cannot grant the motion to dismiss unless it appears beyond doubt that Baltz can prove no set of facts entitling her to relief. *See Hishon v. King & Spalding*, — U.S. —, —, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). We must take as true, moreover, all material allegations of fact in the complaint. With these standards in mind, we turn to Baltz's complaint and defendants' challenge to it.

### I. *The Allegations of Fact*

The story told in the complaint can only be described as strange. Baltz worked as a deputy sheriff in the County until February 23, 1983, the first day of the bizarre sequence of events described in the complaint.

The Sheriff and the County allegedly have a policy which empowers the Sheriff to use unfettered discretion in demanding that a deputy submit to a psychological exam. Dr. Hilger apparently contracts with the County to perform these exams. Under the policy, the Sheriff may suspend a deputy until she agrees to submit to an exam. The Sheriff may fire any deputy who refuses to be tested.

Sometime in early 1983, the Sheriff demanded that Baltz submit to a psychological exam with Dr. Hilger. She was suspended until she agreed to meet with Dr. Hilger. Under threat of losing her job, Baltz agreed to meet with Dr. Hilger at her home at 10:00 p.m. on February 23, 1983.[1] Allegedly under orders from the Sheriff, Dr. Hilger arrived at Baltz's home with Deputies Butkovick and Kaupus, who were in full uniform. Without probable cause, provocation or search warrant, Dr. Hilger ordered the two deputies to search Baltz's home, which they did, despite Baltz's protests. After finishing the search,[2] the three defendants—allegedly acting with the Sheriff's knowledge and approval—demanded that Baltz accompany them to the County jail. Baltz protested and demanded to be shown an arrest warrant, but Dr. Hilger told her that no arrest warrant had been issued but that she had to obey their demand to leave with them. During all of this, Baltz's two children had become hysterical, which must not have been ameliorated when Dr. Hilger allegedly told them that their mother would kill them and then herself if she were not imprisoned.

Dr. Hilger and the two deputies took plaintiff away, against her will, at about 2:30 on the morning of February 24. Without "booking" her, advising her of any charges or taking her before a judge or magistrate, defendants jailed her.

Several hours later, about noon on the 24th, Dr. Hilger gave Baltz the following choices: she could remain in jail, be admitted to Tinley Park Mental Institution or be admitted to St. Joseph's Hospital for at least seven days. During all of this time, Baltz was not allowed to call a lawyer. Confronted with this limited range of choices, Baltz "chose" to be admitted to St.

Joseph's Hospital. The complaint alleges that there was no medical or phychological need for such admission.

Baltz asked the Sheriff to be reinstated to her job. The Sheriff refused, demanding that she first submit to intensive psychotherapy with Dr. Hilger. Apparently feeling that Dr. Hilger had not established good rapport with her, Baltz refused to let him test or treat her. Instead, she underwent testing at her own expense. The testing showed that she was fit to work, but the Sheriff refused for several months to reinstate her. Finally, after hiring private counsel and undergoing more psychological tests at her own expense, Baltz was reinstated.

The complaint alleges that the Sheriff knew and approved of the above acts. Moreover, the defendants allegedly conspired to do the above acts in order to deprive Baltz of her civil rights.

The complaint contains four "counts." Counts I and II are brought under 42 U.S.C. § 1983.[3] Count I alleges that the above acts deprived Baltz of "her civil rights and of the the protections guaranteed her under the United States and Illinois Constitutions." No specific constitutional provision is mentioned. Count II alleges that the Sheriff's department's "customs, procedures, policies and methods of operation" deprived Baltz of her rights to due process of law. Count III alleges a pendent state claim of false arrest and imprisonment. Count IV alleges a state claim of intentional infliction of emotional distress.

The Sheriff and the two deputies filed an answer, denying most of the material allegations of the complaint. They admit that they came to Baltz's house, that she left

1. This is just one of the peculiar facts to follow. It is puzzling why 10:00 p.m. on a weeknight would be chosen as the time for the exam.

2. The complaint does not state what the defendants might have been searching for.

3. Section 1983 provides in relevant part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

with them and that she ended up at the hospital. They deny, however, that she went unwillingly, and they deny the more egregious allegations in the complaint.

In addition to answering, the Sheriff has moved to dismiss two parts of the complaint. First, he argues that to the extent that the complaint challenges the general policy of requiring deputies to undergo psychiatric tests, it fails to state a claim. Second, he argues that the facts alleged in the complaint are not outrageous enough to make out the tort of intentional infliction of emotional distress.

The other defendants have not answered, but have moved to dismiss the claims against them. Dr. Hilger asserts that as a private party he did not act "under color of state law," either individually or in conspiracy with the other defendants. The County asserts that as a matter of Illinois law it is distinct from the Sheriff's department, and thus cannot be held liable under § 1983 for the alleged acts of Sheriff's employees. We will consider the County's motion first.

## II. *The County's Motion to Dismiss*

■ The County points out that under Illinois law, the Sheriff is an independent, elected official. *See* Ill. Const. art. 7, § 4.[4] Moreover, Ill.Rev.Stat. ch. 125, § 13[5] states that the Sheriff is responsible for the actions of his or her deputies. Interpreting these provisions, courts in our district have held that Cook County could not be held liable under § 1983 for the constitutional torts of "its" Sheriff's department. *See Thomas v. Talesky*, 554 F.Supp. 1377 (N.D.Ill.1983). While the County can be held liable in tort under the doctrine of *respondeat superior, see Holda v. County*

of Kane, 88 Ill.App.3d 522, 43 Ill.Dec. 552, 410 N.E.2d 552 (2d Dist.1980), § 1983 liability cannot be predicated upon that doctrine. *See Thomas*, 554 F.Supp. at 1378, *citing Monell v. Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978). Under Monell, the County's policies must be directly responsible for Baltz's injuries.

The complaint merely alleges that the County had a policy supporting the testing program, as well as the specific acts alleged in the complaint. In light of the above analysis of Illinois law, revealing the separation between the Sheriff and the County, we think the complaint must allege more to survive a motion to dismiss. It is conceivable that a County may somehow influence a Sheriff's department policy. Thus, we do not hold that § 1983 liability may never attach to a County for acts of the Sheriff. Rather, we hold that mere conclusory allegations of a County "policy" is not sufficient to state a claim, given the background law indicating that the two entities are separate. We therefore grant the County's motion to dismiss.[6]

## III. *The Motion to Dismiss the Due Process Claim*

■ The Sheriff seeks to dismiss the complaint insofar as it purports to allege that the Sheriff's psychological testing policy, on its face, violates substantive due process. He relies on an Illinois case sustaining a police chief's power to require subordinates to undergo physical examinations. *See Conte v. Horcher*, 50 Ill.App.3d 151, 8 Ill.Dec. 329, 365 N.E.2d 567 (1977). In her memorandum, Baltz concedes that the psychological testing requirement is

---

**4.** That Constitutional provision states:
Each County shall elect a sheriff ... for terms of four years at general elections as provided by law.

**5.** Ill.Rev.Stat. ch. 125, § 13, provides:
The Sheriff shall be liable for any neglect or omission of the duties of his or her office, when occasioned by a deputy ... in the same manner as for his or her own personal neglect or omission.

**6.** We alternatively base this holding on Local Rule 13b, which states:

b. Failure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion or a withdrawal of opposition thereto, but the court on its own motion or that of a party may strike the motion or grant the same without further hearing.

Baltz did not respond to the County's motion. Under the discretion given us by Local Rule 13b, we grant the County's motion because of Baltz's failure to respond.

constitutional on its face. *See* Plaintiff's Memorandum at 2. Thus, we need not address this issue. Any claim challenging the testing requirement on its face is dismissed. In so ordering, we express no opinion on the merits of such a facial due process challenge to the testing requirement.

Baltz argues that her complaint challenges not the policy itself, but how it was implemented. She states that her due process rights were violated when the defendants allegedly searched her home, arrested her, denied her access to counsel and jailed her, all without probable cause or judicial process. The Sheriff asserts that she has only stated a Fourth Amendment violation, which they do not challenge in the motion to dismiss. We think the facts alleged in the complaint plainly support a due process claim in addition to a Fourth Amendment claim. Apart from the warrantless search, the alleged arrest and the imprisonment deprived Baltz of her liberty without any process, let alone due process.

The problem with Baltz's complaint is not that the alleged facts fail to support a due process claim. Rather, the complaint does not in explicit terms reach that conclusion. Count I alleges only violations of the Federal and State Constitutions.[7] No provisions are singled out. Neither is Count II carefully crafted. The relevant paragraph[8] is not clear as to whether it is challenging the testing policy on its face, as implemented, or both. However, no defendant has moved for a more definite statement. *See* Fed.R.Civ.P. 12(e). The parties have talked about these two counts only in terms of due process and the Fourth Amendment, however. Accordingly, we will construe Count I as a Fourth Amendment claim only, which is not challenged in the pending motions. Since Count II can be read as a due process challenge to the policy, both on its face and as applied, we will construe it as such. Under our earlier reasoning, then, we dismiss Count II insofar as it is a facial challenge. But because Count II also states a due process claim grounded in the facts of this case, but not in the general policy, we deny the motion to dismiss that part of the claim.[9]

## IV. *The Emotional Distress Claim*

Under Illinois law, the tort of intentional infliction of emotional distress contains the following elements:

(1) extreme and outrageous conduct by the defendants;

(2) intent to cause, or a reckless disregard of the probability of causing, emotional distress;

(3) severe or extreme emotional distress suffered by plaintiff;

(4) actual and proximate causation of the emotional distress by defendants' outrageous conduct.

*See Public Finance Corp. v. Davis*, 66 Ill.2d 85, 89–90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976); *see* also Restatement (Second) of Torts, § 46 (1965). The complaint alleges these elements. The Sheriff argues that the facts alleged in the complaint do not meet the strict requirements of the first element. We disagree.

7. We note that the complaint alleges a violation of the Illinois Constitution via the § 1983 right of action. This cannot be done, since § 1983 grants relief for violations of the federal Constitution and laws. Absent an allegation of a right of action for violation of an Illinois constitutional provision, we dismiss, *sua sponte*, Baltz's claims to the extent they arise under the State Constitution.

8. Paragraph 28 of the complaint alleges:
    That Defendants, following the customs, procedures, policies and methods of operation of the Sheriff's Department of THE COUNTY OF WILL, while acting in consort and conspiracy with each other, and without cause or right, and unlawfully, intentionally, maliciously and knowingly, did deprive Plaintiff of her rights to due process of law under the United States Constitution and under the Constitution of the State of Illinois.

9. The Sheriff argues that he is entitled to immunity from liability on the claim challenging the testing policy on its face. Since we have dismissed that part of the claim, we need not reach the immunity issue. The Sheriff has not asserted an immunity defense to liability on the Fourth Amendment claim or on the rest of the due process claim.

■ It is clear that only heinous conduct will be considered "extreme and outrageous" under Illinois law.

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found [only when the conduct] is so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency."

*Public Finance*, 66 Ill.2d at 89–90, 4 Ill. Dec. 654, 360 N.E.2d at 767, *quoting*, Restatement (Second) of Torts, § 46, Comment d (1965). We cannot say as a matter of law that defendants' alleged conduct falls short of the outrageousness required under Illinois law. Assuming that the facts alleged in the complaint are true, a jury could reasonably find that defendants' conduct was outrageous enough to warrant liability.

According to the complaint, construed in the light most favorable to Baltz, the defendants (acting in conspiracy) dragged her out of her house in the middle of the night after searching it; told her children that she could have killed them and herself; threw her in jail for ten hours; denied her access to a lawyer or court; and told her she would remain in jail unless she agreed to check into a mental institution. These facts are not "mere insults, indignities, threats, [or] trivialities." We think a jury could reasonably conclude that the conduct was "so outrageous ... and extreme ... as to go beyond all bounds of decency." Accordingly, the Sheriff's motion to dismiss Count IV is denied.

### V. *Dr. Hilger's Motion to Dismiss*

Dr. Hilger asserts that the complaint does not allege enough facts to support a claim that he, a "private" actor, acted "under color of state law." We disagree.

■ It is well settled that a claim under § 1983 contains two fundamental elements. First, the plaintiff must allege the violation of a right secured by the Constitution and laws of the United States. Second, the plaintiff must allege that the defendant deprived her of this constitutional right "under color of any statute ... custom, or usage, of any State," i.e., "under color of law." *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 930, 102 S.Ct. 2744, 2751, 73 L.Ed.2d 482 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). Baltz has plainly met the first § 1983 requirement, as our previous holdings make clear. Dr. Hilger only challenges the second requirement. This "under color of law" requirement has been equated with the "state action" requirement of the Fourteenth Amendment. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982).

Under recent Supreme Court cases, the ultimate "state action" question is whether "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the state." *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754; *Rendell-Baker*, 457 U.S. at 838, 102 S.Ct. at 2770. The answer to this question necessarily depends on the facts of each case. *See Lugar*, 457 U.S. at 939, 102 S.Ct. at 2755. "[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). That is, when the State places its "imprimatur" on the "private" action, it becomes "state" action. *Id.* at 1003, 102 S.Ct. at 2785. Applying these principles to this case, we hold that Dr. Hilger acted "under color of state law."

■ The complaint specifically alleges that Dr. Hilger was hired by the Sheriff to perform psychological testing; that on the night of the arrest he was acting under

orders of the Sheriff; that he ordered the deputies, who were in uniform, to search the house and to arrest Baltz; and that, again with knowledge and approval of the Sheriff, he gave Baltz the "choice" of remaining in the County jail or moving into the hospital. These facts clearly show that the "state," via the Sheriff, placed its "imprimatur" on Dr. Hilger's acts. Indeed, he ordered Dr. Hilger to so act, and Dr. Hilger presumably was compensated for his acts. Unlike *Rendell-Baker*, where the state funded and regulated the private entity, but played no part in the alleged constitutional wrong, the "state" here paid, ordered and encouraged the unconstitutional conduct.

Dr. Hilger has submitted an affidavit which states facts supporting an argument that under common law he is an "independent contractor" as opposed to an "agent." He concludes from this that he cannot be held liable under § 1983. We disagree. The common law independent contractor/agent distinction has limited relevance to the state action analysis. As noted above, the principal inquiry under the Supreme Court cases is whether the state encouraged, coerced or otherwise placed its imprimatur on the private conduct. Dr. Hilger's affidavit does not address the facts surrounding the night in question. It merely speaks in general terms about his financial relationship with the County. In sum, we conclude that Dr. Hilger's conduct may "fairly be attributed to the state."

■ We also find state action under a "conspiracy" theory.[10] In addition to using the above "nexus" approach, courts may find state action under the so-called "public function" test,[11] *see Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (company town); *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) (public park), or under a "conspiracy test," which is really a variant of the "nexus" approach. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In *Adickes*, the defendant was a restaurant owner who refused to serve Ms. Adickes, a white patron who entered the restaurant with black friends. A police officer was apparently present at the time, and he arrested Ms. Adickes as she left the restaurant. A District Court had granted summary judgment, holding that the restaurant owner had not acted under color of state law in refusing to serve *Adickes*. The Supreme Court reversed, holding that private parties who conspire with public officials to violate someone's constitutional rights can be liable under § 1983:

> [A] private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. Private persons, jointly engaged with state officials in the prohibited action are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

398 U.S. at 152, 90 S.Ct. at 1605–06 (internal quotations omitted). A plaintiff in a conspiracy case must ultimately show that the private party had a "meeting of the

---

10. Dr. Hilger's memoranda focus on this conspiracy theory, which is discussed in more detail below. He argues that Baltz conceded the state action issue under the more direct, "nexus" approach we have taken above. We disagree. While Baltz, too, focused on the conspiracy theory, she did cite a "nexus" case, *see Tomkins v. Village of Tinley Park*, 566 F.Supp. 70 (N.D.Ill. 1983), and made a brief "nexus" argument. Baltz's problem was not that she conceded the issue. Rather, she collapsed the "conspiracy" and "nexus" approaches. Conspiracy is just one form of "nexus," which can be shown in more direct ways, as discussed above.

11. Arguably, there was also "state action" in this case under a "public function" analysis. The facts in the complaint suggest that Dr. Hilger was, in effect, deputized. In ordering the real deputies about, he was assuming what is normally an "exclusive prerogative of the State," *see Blum*, 457 U.S. at 1005, 102 S.Ct. at 2789, that is arresting and jailing a private citizen. However, in light of our alternative holdings finding state action, we need not decide whether Dr. Hilger falls within the public function test.

minds" with the public official. *Id.* at 158; 90 S.Ct. at 1609.

Dr. Hilger recognizes this conspiracy theory of state action, but argues that the allegations in the complaint are not specific enough to support a conspiracy claim. Dr. Hilger relies on *Sparkman v. McFarlin,* 601 F.2d 261, 263–68 (7th Cir.1979) (*en banc*) (Sprecher, J., concurring); *see also Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206–07 (7th Cir.1980). *Sparkman* involved the § 1983 liability of a private person alleged to have conspired with an absolutely immune state judge. The majority affirmed the district court's dismissal of the plaintiff's claim for failure to allege the conspiracy with some particularity. Judge Sprecher, concurring, wrote:

> It is not sufficient to allege that the defendants merely acted in concert or with a common goal. There must be allegations that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding. Even were such allegations to be made, they must further be supported by some factual allegations, suggesting such a 'meeting of the minds.'

601 F.2d at 268. We have some doubts about whether the *Sparkman* particularity requirement applies to this case. As the Court noted later in *Tarkowski,* "[s]ome of this court's language in *Sparkman* suggests that that opinion pertains only to alleged conspiracies with judges." 644 F.2d at 1206 n. 4; *see Sparkman,* 601 F.2d at 262 (Fairchild, C.J., with Tone, J., concurring). Although *Tarkowski* extended *Sparkman* to alleged conspiracies with prosecutors, who are also immune, there is language in both cases suggesting that they are limited to situations where the state official is immune under § 1983.[12] This pleading rule makes sense in the limited context of immune officials. The particularity rule prevents a plaintiff who cannot recover from an immune state official from easily bootstrapping a private party into court in order to evade the immunity. However, such is not the case here. As we noted above, *see* n. 9 above, the Sheriff and the deputies are apparently not immune in this case. Thus, the *Sparkman* pleading rule might not apply here. In the final analysis, however, we need not decide whether this distinction warrants a holding that the *Sparkman* standard does not apply here. Even under that case's rule of pleading conspiracy with particularity, the complaint in this case suffices.

As Dr. Hilger points out, the complaint contains several conclusory allegations of conspiracy. But Dr. Hilger wrongly states that the complaint lacks factual allegations supporting that conclusion. Dr. Hilger admits that he has some sort of employment relationship with the Sheriff. The complaint alleges that, in furtherance of this employment, and acting either under the Sheriff's orders or with his knowledge and approval, Dr. Hilger (1) accompanied the deputies to Baltz's home; (2) *ordered* them to search the house and arrest Baltz; (3) told Baltz there was no arrest warrant, but that she had to come with him; (4) told Baltz later that she had to choose between jail and a mental hospital. We think these facts amply support an inference that Dr. Hilger and the Sheriff had a "meeting of the minds."

It must be noted that "[h]owever strict its pleading requirements may be, *Sparkman* does not require proof at the pleading stage. Conspiracies are ordinarily clandestine, so that proof of them will often be by purely circumstantial evidence." *Brucar v. Rubin,* 638 F.2d 987, 993 (7th Cir.1980) (holding that plaintiff satisfied *Sparkman* in alleging a claim of conspiracy with a

---

**12.** Judge Sprecher's opinion relied on case law where the state actor was immune and focused on the policy issues of suing a state court judge. 601 F.2d at 264–68. Judge Fairchild's concurrence, joined by Judge Tone, explicitly ties the pleading requirement to the situation where a private person conspires with a judge. 601 F.2d at 262. Judges Pell and Bauer refer to state action "through a person entitled to immunity." 601 F.2d at 263. *Brucar v. Rubin,* 638 F.2d 987 (7th Cir.1980), is consistent with both *Sparkman* and *Tarkowski,* as it states that *Sparkman* "added strict pleading requirements to the *Adickes* rule *where the 'joint activity' is between private individuals and a state court official.*" 638 F.2d at 973 (emphasis added).

judge). Thus, it does not matter that Baltz failed to allege that Dr. Hilger and the Sheriff met at a specific time and place, and then and there plotted to violate Baltz's rights. Rather, we can infer a meeting of the minds from the alleged facts that Dr. Hilger was paid by the Sheriff, ordered the deputies about, and appeared to be a principal actor in the sequence of events. The Supreme Court made a much more attenuated inference in *Adickes* in holding that finding a conspiracy was possible in that case.[13]

In sum, we hold that the facts alleged in the complaint state a claim that Dr. Hilger acted "under color of state law," under either a direct state action theory or a more inferential conspiracy approach.

## VI.  *Conclusion*

The County's motion to dismiss is granted. Dr. Hilger's is denied. The Sheriff's motion to dismiss is granted to the limited extent that the complaint states a claim (1) that the testing requirement is invalid on its face, and (2) that the Illinois Constitution has been violated. In all other respects, the Sheriff's motion is denied. It is so ordered.

---

**13.**  398 U.S. at 153–59; 90 S.Ct. at 1606–09. In *Adickes,* like the Seventh Circuit cases cited above, the defendant was a purely private individual, who, unlike Dr. Hilger, was not hired for his allegedly unconstitutional acts. The *Adickes* court held that a jury-finding of conspiracy was possible because of the presence of the arresting officer in the restaurant when Ms. Adickes was there:

If a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a "meeting of the minds" and thus reached an understanding that petitioner should be refused service.

*Id.* at 158; 90 S.Ct. at 1609. We think an inference of a "meeting of the minds" is based on more substantial facts in this case.