Jane DOE, Plaintiff,

v.

CITY OF CHICAGO, a municipal corporation, Officer Bruce (# 4481), Joseph Pantalena, and E & R Towing & Garage, Inc., Defendants.

No. 96 C 5739.

United States District Court,
N.D. Illinois,
Eastern Division.

March 23, 1999.

Mary Louise Boelcke, Attorney, Chicago, IL, Edward Ted Stein, Karen E. Tam-

burro, Law Offices of Edward T. Stein, Chicago, IL, for Jane Doe, I, plaintiff.

Susan S. Sher, Sharon Baldwin, Alec McAusland, Law Department, Corporation Counsel, Chicago, IL, George John Yamin, Jr., Department of Law, Chicago, IL, for City of Chicago, defendant.

Sharon Baldwin, Alec McAusland, Law Department, Corporation Counsel, Chicago, IL, John F. McGuire, Steven M. Yarosh, Law Department, Chicago, IL, for Officer Bruce, defendant.

Bernard Francis Crotty, Martin J. McNally & Associates, Markham, IL, for Joseph Pantalena, E & R Towing & Garage, Inc., defendants.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Jane Doe ("Doe") is suing Environmental Auto Removal, Inc. ("EAR") and one of its employees, Joseph Pantalena ("Pantalena"), over events related to Doe's arrest for disorderly conduct at the City of Chicago auto pound ("the pound").[1] In count I of her six-count complaint, Doe alleges that Pantalena violated 42 U.S.C. § 1983 when he deprived her of her right to be free from unlawful seizure. In count II, Doe claims that her arrest and subsequent criminal proceedings constituted a malicious prosecution by Pantalena, also in violation of 42 U.S.C. § 1983. In count IV, Doe alleges a state law false arrest claim against both EAR and Pantalena. In count V, Doe asserts a state law claim of malicious prosecution against EAR and Pantalena. Finally, in count VI, Doe alleges intentional infliction of emotional distress against EAR and Pantalena. EAR

and Pantalena now move for summary judgment on all counts against them. For the following reasons, the court grants in part and denies in part EAR and Pantalena's motion for summary judgment.

### Background

On February 20, 1996, Doe was involved in an automobile accident which left her car severely damaged. (Def.12(M) ¶ 5.) After the accident, Doe's car was towed to the pound, and Doe and her son then went to the pound to remove property from her damaged automobile. (Doe Dep. at 35; Def. 12(N) ¶¶ 6–7.) At the pound, Doe obtained a pass from a City employee which read, "Pick Up Personal Belongings," and walked to her vehicle. (Pl.'s 12(N) Stmt. of Add'l Facts ¶¶ 34–35.) Doe's son removed all of the parts of the stereo system which he found in the car and also wanted to also take the battery out of the car. (Pl.'s 12(N) Stmt. of Add'l Facts ¶¶ 36–37; Doe Dep. at 40.)

Carrying the items taken from the car, Doe and her son walked to a trailer where pound personnel work to inquire whether they could also take the car's battery. (Def.12(M) ¶ 10; Pl.'s 12(N) Stmt. of Add'l Facts ¶ 37.) As Doe and her son walked toward the trailer, Pantalena appeared and ordered Doe to return the items she and her son were carrying to her car. (Def.12(M) ¶ 13; Pl.'s 12(N) Stmt. of Add'l Facts ¶ 38.) Doe stated that she was simply trying to collect her personal property from her automobile. (Pl.'s 12(N) Stmt. of Add'l Facts ¶ 39.) Pantalena informed Doe that the car stereo and battery were not considered personal property and that she would have to return those items to her car. (Def.12(M) ¶ 13.)

---

1. EAR and Pantalena are not the only defendants in this lawsuit. Rather, Doe brings her six-count complaint against the City of Chicago, Chicago police officer James Bruce, EAR, and Pantalena. However, the City of Chicago and officer Bruce already filed a motion for summary judgment that this court denied. Defendants EAR and Pantalena now move for

summary judgment on counts I, II, IV, V, and VI—the only counts against them. Because the court has already denied the City's and officer Bruce's motion for summary judgment, this Opinion will only discuss Doe's claims as they pertain to defendants EAR and Pantalena.

Apparently displeased with Pantalena's instructions, Doe then followed Pantalena into the trailer, requesting that Pantalena provide her with a copy of the written policies which define " personal property." (Def.12(M) ¶ 14; Pl.'s 12(N) Stmt. of Add'l Facts ¶ 41.) Pantalena did not produce any written policies; instead, Pantalena stated that the policy defining personal property was whatever he said it was. (Def.'s Resp. Pl.'s 12(N) Stmt. of Add'l Facts ¶ 47.) Pantalena told Doe that only items such as clothing or a purse consti- tute personal property. (Def.Resp. Pl.'s 12(N) Stmt. of Add'l Facts ¶ 42.)

The actual written policy of the pound allows a person to remove anything from the vehicle that is not affixed to or part of the vehicle. (Pl.'s 12(N) Stmt. of Add'l Facts ¶ 43; Sorfleet Dep. at 27–29; EAR Handbook at D–E & R000150.) Specifical- ly, the relevant part of the handbook pro- vides:

> When verified and properly documented, the owner of an impounded vehicle will be allowed to remove his/her personal property from the vehicle. The defini- tion of personal property in this case is as follows: Any item(s) or possession(s) that is not affixed to or part of the vehicle with the exception of license plates. Example of what is not personal property: (battery, radio or speakers, tires, etc.) Example of what is personal property: (clothing, tools, docu- ments/important papers etc.).

(EAR Handbook at D–E & R000150.) EAR provides its employees with a copy of the handbook which contains this provi- sion. (Def.Resp. Pl.'s 12(N) Stmt. of Add'l Facts ¶ 48.)

After Pantalena refused to produce a written copy of the policy, Doe asked to speak to Pantalena's supervisor. (Def.Resp. Pl.'s 12(N) Stmt. of Add'l Facts ¶ 49.) Pantalena refused, stating that he was the supervisor. (Def.Resp. Pl.'s 12(N) Stmt. of Add'l Facts ¶ 50.) Pantalena then told Doe that the only way she could re- move the items in question was to pay the tow fee and remove her entire vehicle from the pound. (Def.Resp. Pl.'s 12(N) Stmt. of Add'l Facts ¶ 52.) Doe then offered to pay the tow fee, but requested that she be able to leave the car at the pound since it was too severely damaged for her to drive away from the pound. (Pl.'s 12(N) State- ment of Additional Facts ¶ 56.) Pantalena rejected Doe's offer and ordered her to leave the property, (Def.Resp. Pl.'s 12(N) Stmt. of Add'l Facts ¶ 57), but Doe refused to leave the pound without the property she wanted to take with her. (Def.12(M) ¶ 15.)

When Doe refused to leave the pound, Pantalena asked the secretary to call the police. (Def.12(M) ¶ 16.) Chicago police officer James Bruce responded to the call and arrived on the scene. (Def.12(M) ¶ 17.) Pantalena identified himself to offi- cer Bruce as the supervisor on the site and explained to Bruce that Doe was causing a disturbance in the trailer and that she refused to leave when Pantalena asked her to leave. (Def.12(M) ¶ 22; Bruce Dep. at 67.) After hearing Pantalena's version of the events, officer Bruce asked Doe to leave the pound several times, instructing her that it was a business and her refusal to leave violated the law. (Bruce Dep. at 78–79.) Doe persisted in her refusal to leave without her belongings and officer Bruce then arrested her. (Def.12(M) ¶¶ 25–26.)

Officer Bruce handed Pantalena a blank complaint form, which Pantalena signed. (Bruce Dep. at 80.) Officer Bruce filled out the complaint at the police station after taking Doe into custody. (Bruce Dep. at 80.) The complaint alleged that Doe en- gaged in disorderly conduct by refusing to leave the pound where she was creating a disturbance and refused to leave the prop- erty even after being advised that her failure to do so would result in her arrest. (Crim.Compl., Pl.'s Ex. 1.) Doe later ap- peared at a hearing on the disorderly con- duct charge. The court dismissed the charge because neither Pantalena nor offi- cer Bruce appeared to testify. (Doe Dep.

at 118; Def. 12(M) at ¶ 32.) Doe filed her six-count complaint against EAR and Pantalena. Defendants EAR and Pantalena now move for summary judgment on counts I, II, IV, V and VI.

### Analysis

The court will render summary judgment only if the factual record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 (7th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Bratton*, 77 F.3d at 171 (citation omitted); *Sullivan*, 78 F.3d at 325 (citation omitted). On a motion for summary judgment, the moving party "bears the initial burden of showing that no genuine issue of material fact exists." *Hudson Ins. Co. v. City of Chicago Heights*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Then the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord, NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir.1995) (citations omitted).

### I. Count I—Section 1983 Unlawful Seizure

Doe alleges that Pantalena violated § 1983 when he deprived her of her right to be free from unlawful arrest, imprisonment, search, seizure, and detention under the Fourth and Fourteenth Amendments of the United States Constitution. A claim under 42 U.S.C. § 1983 contains two essential elements: (1) a violation of a right secured by the Constitution or laws of the United States; and (2) defendant must have violated this right under color of state law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Starnes v. Capital Cities Media, Inc.*, 39 F.3d 1394 (7th Cir.1994). Pantalena does not address the first element of Doe's § 1983 claim—whether Doe's arrest violated a right secured by the Constitution.[2] Instead, Pantalena argues that he is entitled to summary judgment on this claim because he is a private citizen employed by a private company and not a "state actor." Pantalena therefore asserts that Doe fails to show evidence from which a reasonable juror could conclude that he acted under color of state law when Doe was arrested.

To show that a private citizen acted under color of state law, the plaintiff must show that the behavior meets one of four tests. First, under the "state compulsion test," a private citizen may be liable under § 1983 when "the state has so implicated itself in the defendant's action that the state has in effect compelled the action." *Starnes*, 39 F.3d at 1394 (citing *Adickes*, 398 U.S. at 170, 90 S.Ct. 1598). Second, under the "public function test," the actions of a private individual may be attributed to the state when the private party is engaging in an activity that is traditionally the exclusive prerogative of the state. *See Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953). Third, under the "joint action test" a private defendant may be said to be acting under color of state law if that defendant and the state official had a 'meeting of the minds' and thus reached an understanding that the plaintiff be denied a constitutional right. *See Sparkman v. McFarlin*, 601 F.2d 261 (7th Cir.1979). Finally, under the "nexus test," state action by a private party exists

---

2. In the court's order denying the City's and officer Bruce's motion for summary judgment, the court found a genuine issue of material fact over whether there was probable cause to arrest Doe. *See, e.g., Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1345 (7th Cir.1985) (holding a fact question exists regarding probable cause where a citizen provided inaccurate information to the police and the police made an arrest without conducting a reasonable investigation).

where the state has so far insinuated itself in the private party's actions as to create an interdependence between the state and the individual. *See Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Applying the different tests in different contexts is a "necessarily fact-bound inquiry." *Lugar v. Edmonson Oil Company, Inc.*, 457 U.S. 922, 938, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). To hold Pantalena liable under § 1983, Doe must show that his conduct meets one of these four tests establishing state action.

■ Applying the "public function test," the facts in this case could lead a reasonable jury to find that Pantalena acted under color of state law. Under the "public function" test, a private entity may be held liable under § 1983 where it performs functions that are "traditionally the exclusive prerogative of the State." *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir.1996) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). Such functions are so closely associated with the government that a state cannot limit its accountability for their performance, even if they are carried out by private parties. *Wade*, 83 F.3d at 904–05.

Doe argues that by virtue of EAR's exclusive contract with the City of Chicago, Pantalena has been delegated the exclusive function of towing and storing towed by the City of Chicago. Doe cites numerous cases which hold that the act of towing by a private company for a city or a state constitutes state action for the purposes of § 1983. (See Pl.'s Resp. at 10.) However, Doe's lawsuit does not claim that the act of towing her car to the pound constituted state action. Rather, Doe's lawsuit centers around Pantalena's conduct after the towing occurred. Therefore, the cases Doe cites do not aid her argument.

Nevertheless, Doe shows facts which support her argument that the City delegated functions to EAR that are traditionally the prerogative of the state. The City

of Chicago has an exclusive contract with EAR for management of Chicago's two City-owned auto pounds. (*See* Pl.'s 12(N) Stmt. of Add'l Facts at ¶¶ 10–12, 14; Sorfleet Dep. at 11, 33; The Pilot Towing and Pound Management Agreement ("Towing Agreement") § 5.02.) Pursuant to its contract with the City, EAR is required to tow vehicles at the City's direction, provide the City with the tow case and inventory report, inventory vehicles, answer inquiries about vehicles, and maintain records indicating where the vehicle is located in the Auto Pound. (Pl.12(N) Stmt. of Add'l Facts at ¶ 18; Sorfleet Dep. at 13; Towing Agreement § 3.02, 3.05, 3.06.) In addition, EAR employees maintain security inside the pound, staff the pound, limit access to the pound to authorized individuals, answer inquiries regarding vehicles, and assist in the redemption of vehicles. (See Pl.'s 21(N) Stmt. of Add'l Facts at ¶¶ 18–19; Towing Agreement, §§ 3.04, 3.05.) EAR's contract with the City is authorized by statute. (See Pl.'s 12(N) Stmt. of Add'l Facts at ¶ 10; Municipal Code Handbook § 9–92–050.)

Defendants EAR and Pantalena rely on *Wade v. Byles* in support of their contention that Pantalena was not acting under color of state law pursuant to the public function test. In *Wade*, the defendant was a security guard employed by a private company that contracted with the Chicago Housing Authority to provide security for certain public properties. *See Wade*, 83 F.3d at 903. The plaintiff in *Wade* filed a § 1983 claim alleging violations of his Fourteenth and Fourth Amendment rights against the security guard and his employer when the plaintiff was shot by the security guard in an altercation. *See id.*

The Seventh Circuit held in *Wade* that the powers delegated by the City to the defendant security guard were "limited and local" and therefore did not constitute powers traditionally the exclusive prerogative of the state. *Id.* at 905. The court reasoned that the security company "possessed powers no greater than those of

armed security guards who are commonly employed by private companies to protect private property." *Wade,* 83 F.3d at 905. Thus, the responsibilities of the security company were limited to the specific properties it had contracted with the City to secure as well as shared with the Chicago Police Department.

In this case, the defendants' reliance on *Wade* is misplaced. Unlike the security company in *Wade,* EAR has an exclusive contract with the City to tow and store all cars which the City of Chicago deems necessary. (See Pl. 12(N) Stmt. of Add'l Facts at ¶ 18; Sorfleet Dep. at 13; Towing Agreement §§ 3.02, 3.05, 3.06.) Contrary to defendants' assertion, EAR's powers authorized by local ordinance and its contract with the City are not "limited and local" in nature. If the City of Chicago directs that a car be towed, only EAR may tow that car. Unlike the security company in *Wade,* EAR's towing responsibilities are not limited to specific properties in the City. Rather, EAR is responsible for towing, storing, and releasing all cars throughout the City of Chicago at the City's direction.

Pantalena asserts that EAR does not excessively perform this public function because the City reserves the responsibilities of collecting towing fees and helping to operate the auto pound. However, these facts are not inconsistent with Doe's claim that the City has allocated the full powers of the City's "in-house" towing and storage entity to EAR. This division of responsibilities among the City and EAR is of a completely different and far less significant nature than was present in *Wade. See Wade,* 83 F.3d at 905. Accordingly, the court finds this case distinguishable from *Wade.*

Doe meets her burden of showing a genuine issue of material fact over whether Pantalena's conduct may be fairly attributed to the state under the public function test. Pantalena was employed by EAR and held himself out as the supervisor on duty at the pound. (*See* Doe Dep.

at 43–44; Bruce Dep. at 67.) Additionally, Pantalena stated that there was no official written policy regarding personal property and that policy was what he said it was. (Doe Dep. at 43–44.) EAR's contract with the city requires that EAR employees to "answer inquiries regarding vehicles" as well as maintain "the security of the facility and impounded vehicles." (*See* Towing Agreement § 3.05.) Thus, when Pantalena refused Doe's requests to take the property at issue, called the police, and signed the complaint for her arrest, he was acting within his capacity as an employee of EAR. There remains a jury question as to whether this behavior may be fairly attributed to the state under § 1983. For these reasons, the court denies Pantalena' motion for summary judgment on count I.

## II. Counts II and V—Malicious Prosecution Under § 1983 and State Law

■ In count II of her complaint, Doe alleges a § 1983 claim of malicious prosecution against Pantalena, and in count V, Doe asserts that both EAR and Pantalena should be held liable for malicious prosecution under Illinois law. To survive summary judgment on her § 1983 malicious prosecution claim, Doe must show facts from which a reasonable jury could conclude that (1) she suffered a deprivation of constitutional magnitude; (2) the malicious prosecution was committed by state actors; and (3) she satisfies the requirements of the state law cause of action for malicious prosecution. *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir.1996); *Smart v. Board of Trustees,* 34 F.3d 432, 434 (7th Cir.1994). EAR and Pantalena attack both of Doe's malicious prosecution claims only on the basis that she fails to show a genuine issue of material fact on the elements of state law malicious prosecution.

■ To survive a motion for summary judgment on a malicious prosecution claim under Illinois law, Doe must show a factual dispute over the following: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the

defendant; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such a proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. *Swick v. Liautaud,* 169 Ill.2d 504, 215 Ill. Dec. 98, 662 N.E.2d 1238, 1242 (1996). EAR and Pantalena only contest Doe's ability to show that they commenced or continued an original criminal or civil judicial proceeding against Doe.

■ Under Illinois law, in order to attribute legal causation of the original criminal action against the plaintiff to a private defendant, a plaintiff must show facts demonstrating that the defendant (1) knowingly made false statements to the police; (2) instituted the proceedings against the plaintiff; or (3) "requested, directed or pressured the officer into swearing out the complaint for the plaintiff's arrest." *Geisberger v. Vella,* 62 Ill.App.3d 941, 20 Ill. Dec. 114, 379 N.E.2d 947, 948 (1978).

■ Defendants argue that Doe fails to show evidence that EAR or Pantalena commenced or continued an original criminal or civil judicial proceeding against her because she cannot show that Pantalena directed or pressured officer Bruce into swearing out the complaint for Doe's arrest. (*See* Def.'s Mot. for Summ.J. at 12.) This argument fails because defendants misstate the legal requirements to show legal causation of the original criminal action. *See Geisberger,* 20 Ill.Dec. 114, 379 N.E.2d at 948. Pressuring or directing a police officer to make an arrest is only one of the ways a plaintiff can establish that a private defendant commenced a criminal action. *Id.* A plaintiff may also satisfy this requirement by showing that the private defendant knowingly provided false information to a police officer to induce the arrest. *Id.; see also Denton v. Allstate Ins. Co.,* 152 Ill.App.3d 578, 105 Ill.Dec. 471, 504 N.E.2d 756, 760 (1987) ("the attribution of police action to a defendant requires ... that defendant knowingly gave false information to the police").

Doe alleged in her complaint that Pantalena initiated the proceedings against her when he directed the secretary to call the police and knowingly gave false information to officer Bruce by stating that Doe was not within her rights to take home the items from her car. In support of her allegation that Pantalena knowingly gave officer Bruce false information, Doe cites EAR's written policy regarding removable personal property as well as the fact that the City supervisor later allowed her to retrieve the items in dispute. (See EAR Handbook, Pl.'s Ex. H; Sorfleet Dep. at 44). These facts contradict Pantalena's statement to officer Bruce that Doe was acting disorderly by insisting that she be allowed to take her personal items from her car. Additionally, since this is a motion for summary judgment, the court must presume that, as an EAR employee, Pantalena knew the correct policy governing removal of personal property. Based on these facts, the court finds a genuine issue of material fact over whether Pantalena commenced the criminal proceedings against Doe by knowingly making a false statement to officer Bruce. The court therefore denies EAR and Pantalena's motion for summary judgment on counts II and V.

### III. *Count IV—False Arrest*

■ Doe alleges a supplemental state law claim of false arrest against both EAR and Pantalena. In Illinois, a private individual may be held liable for false arrest if the defendant goes beyond merely giving information and participates in making an arrest which turns out to have been unlawful. *Butler v. Goldblatt Bros., Inc.,* 432 F.Supp. 1122, 1129 (N.D.Ill.1977). However, what constitutes participation depends on the facts and circumstances of each case. *See id.* Merely giving information to the police is in itself insufficient to constitute participation in an arrest. *See Odorizzi v. A.O. Smith Corp.,* 452 F.2d 229 (7th Cir.1971). In contrast to malicious prosecution claims, the Seventh Circuit and Illinois courts have held that giving

false information to a police officer does not constitute "participating" in a false arrest. *See Butler v. Goldblatt Bros., Inc.,* 589 F.2d 323, 326 (7th Cir.1978); *Pease v. Int'l Union of Operating Engineers Local 150,* 208 Ill.App.3d 863, 153 Ill.Dec. 656, 567 N.E.2d 614, 618 (1991). Thus, a defendant must go beyond providing the information leading to the arrest and actually request and obtain the arrest. *See Butler,* 432 F.Supp. at 1128.

■ In this case, Doe does not present any facts which suggest that Pantalena requested and obtained her arrest. The record reflects that Pantalena merely described his version of events to officer Bruce, stating that Doe was "disorderly" before Bruce arrived. There is no evidence that Pantalena requested that an arrest be made, or that Pantalena said anything at all once officer Bruce began questioning Doe. (*See* Bruce Dep. at 76–80; Doe Dep. at 60–67.) Moreover, officer Bruce clearly stated in his deposition that he did not base his arrest merely on the statements of Pantalena. (See Bruce Dep. at 78–79.) Rather, it was only when Doe persisted in her refusal to leave the pound that Bruce decided to make the arrest. Thus, Doe fails to meet her burden on summary judgment because she fails to show evidence that Pantalena or EAR actively participated in procuring her arrest. The court therefore grants EAR and Pantalena's motion for summary judgment on this claim.

## IV. *Count VI: Intentional Infliction of Emotional Distress*

■ In Count six of her complaint, Doe alleges a supplemental claim of intentional infliction of emotional distress against both EAR and Pantalena. Under Illinois law, the tort of intentional infliction of emotional distress contains the following elements: (1) extreme and outrageous conduct by the defendant; (2) intent to cause, or a reckless disregard of the probability of causing, emotional distress; (3) severe or extreme emotional distress suffered by plaintiff;

and, (4) actual and proximate causation of the emotional distress by defendants' outrageous conduct. *See Public Finance Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765, 767 (1976). Illinois courts have taken a narrow view of what is required to establish a claim for intentional infliction of emotional distress. Specifically, as one court noted,

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found [only when the conduct] is so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency.

*Baltz v. County of Will,* 609 F.Supp. 992, 996 (N.D.Ill.1985) (citing *Public Finance Corp.,* 4 Ill.Dec. 652, 360 N.E.2d at 767).

■ In this case, the parties do not dispute the result of the arrest—that Doe was handcuffed in front of her son, taken to the police station and handcuffed to a wall for over an hour. Applying Illinois's "extreme and outrageous" standard to these facts, Pantalena's actions simply do not rise to the level of extreme outrageousness, beyond all bounds of decency. This conclusion is particularly obvious in light of the fact that most of the conduct Doe complains of was committed by officer Bruce rather than Pantalena. Pantalena was rude, but nothing he did could support a claim for intentional infliction of emotional distress. See Baltz, 609 F.Supp. at 992. Accordingly, the court grants EAR and Pantalena's motion for summary judgment on count VI.

### *Conclusion*

Defendants EAR and Pantalena's motion for summary judgment [doc. 71–1] is granted in part and denied in part. The court grants defendants' motion for sum-

mary judgment on counts IV and VI, but denies defendants' motion for summary judgment on counts I, II, and V. The parties should discuss settlement before the next court date.